IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE
HONORABLE JOEL SCHNEIDER

```
------------------------------------------------------X
JOHAN DANIYAN                            :
                                         :
                       Plaintiff,        :
                                         :      No. 07 Civ. 2734 (JHR)(JS)
             v.                          :
                                         :      JURY TRIAL
MARINA DEVELOPMENT                       :
COMPANY LLC, d/b/a Borgata Hotel         :
Casino & Spa,                            :
                                         :
                       Defendant.        :
------------------------------------------------------X
```

<u>PLAINTIFF'S PRETRIAL ORDER</u>

The following shall constitute the Final Pretrial Order pursuant to Rule 16 of the Federal Rules of Civil Procedure. This Final Pretrial Order shall govern the conduct of the trial of this case and amendments will be allowed only in exceptional circumstances to prevent manifest injustice.

**APPEARANCES:**

**A.    Plaintiff's Appearances:**

  1.    Kenneth P. Thompson, Esq. – Thompson Wigdor & Gilly LLP
  2.    Andrew S. Goodstadt, Esq. – Thompson Wigdor & Gilly LLP
  3.    Gregg H. Salka, Esq. – Thompson Wigdor & Gilly LLP

**B.    Defendant's Appearances:**

  1.    Eileen O. Muskett, Esq. – Cooper Levenson April Niedelman & Wagenheim, P.A.
  2.    Russell L. Lichtenstein, Esq. – Cooper Levenson April Niedelman & Wagenheim, P.A.

PART I.        **JURISDICTION and BRIEF SUMMARY OF THE CASE:**

**Plaintiff's Statement:**

Johan Daniyan ("Plaintiff" or "Mr. Daniyan") is a qualified individual who suffers from, has a record of and/or was regarded as having, a disabling back condition which substantially limited (and continues to limit) his major life activities of walking, lifting, sitting, moving, sleeping and working, among others. Mr. Daniyan suffered this disability while working as a heavy porter at Defendant when he slipped and fell while attempting to carry a heavy trash bag. Because of the severity of the injury, Mr. Daniyan was not immediately able to return to work and perform the physical demands of his job. Upon his return to work, Mr. Daniyan requested that Defendant assign him to light duty to temporarily accommodate his disability. Instead of engaging in a dialog with Mr. Daniyan concerning the accommodations he requested and needed to return to work, Defendant submitted Mr. Daniyan to a baseless drug test -- which he passed.

Days later, without notice, Defendant terminated Mr. Daniyan's employment based on a number of shifting pretextual justifications including alleged prior discipline, the purported failure to submit medical paperwork, and/or that he was being evaluated due to the completion of his probationary period. Each of these reasons should be given short shrift. First, Mr. Daniyan was only disciplined *after* he sustained an injury to his shoulder while working for Defendant which resulted in a need for light duty. Indeed, prior to his shoulder injury, Mr. Daniyan had worked "later" than his shift, but had never been disciplined. In fact, prior to this shoulder injury, Mr. Daniyan had performed stellar work and received a pay-raise and a promotion, despite only working for approximately one month. Thus, these trumped-up warnings were given to Mr. Daniyan for minor infractions solely in retaliation for his request and need for light duty.

Defendant also claims that Mr. Daniyan was terminated at the *end* of his probationary period. However, Mr. Daniyan's probationary period did not end until July 17, 2005, and thus Defendant's assertion that his probationary period was complete is false. Additionally, Mr. Daniyan timely provided Defendant with his medical paperwork, including documents from the treating physician, physical therapy forms, prescription forms as well as the accident report. Thus, Defendant's purported justification based on Mr. Daniyan's alleged failure to turn in his medical paperwork is merely a pretext for the retaliation and/or discrimination against Mr. Daniyan due to his back disability, record of disability, or the perception by Defendant that he was disabled. Similarly, Defendant unlawfully retaliated against Mr. Daniyan for requiring and pursuing workers' compensation benefits for his May 11, 2005, injury.

This is an action for declaratory, injunctive and equitable relief, as well as monetary damages (including compensatory and punitive damages), to redress

Defendant's unlawful employment practices and misconduct against Mr. Daniyan because of this disability, including its failure to accommodate Mr. Daniyan's physical disability, its discriminatory termination of his employment, and its retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); and the New Jersey Law against Discrimination, N.J. Stat. Ann. 10:5-1 *et seq.* ("NJLAD"). In addition, this action seeks such relief for Defendant's unlawful retaliation, including its unlawful termination of Mr. Daniyan's employment in violation of New Jersey Workers' Compensation Law, N.J.S.A. 34:15-1, *et seq.*

Defendant's unlawful conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Mr. Daniyan's protected rights, which has caused and continues to cause Mr. Daniyan to suffer substantial economic and non-economic damages, permanent harm to his ability to obtain employment and severe mental anguish and emotional distress.

Any and all prerequisites, statutory or otherwise, to the filing of this suit have been met. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Mr. Daniyan's civil rights under the ADA. This Court has supplemental jurisdiction over Mr. Daniyan's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**Defendant's Statement:**

The causes of action set forth in Plaintiff's Complaint that remain to be tried against Defendant arise under the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, et seq. ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, et seq. ("NJLAD"). There is also a state law claim alleging retaliation in violation of the New Jersey Worker's Compensation Act. The District Court has jurisdiction over Plaintiff's ADA claim pursuant to 28 U.S.C. §1331. The District Court has pendent jurisdiction over Plaintiff's NJLAD and Worker's Compensation Act claims pursuant to 28 U.S.C. §1367.

Johan Daniyan was employed by Borgata in the housekeeping department from April 18, 2005 until June 20, 2005. Plaintiff began his employment as a Guest Room Attendant and was transferred to the position of Porter. Plaintiff's employment with Borgata was terminated due to his failure to successfully complete his probationary period. His failure to complete his probationary period was based upon poor performance. Specifically, plaintiff's performance did not meet Borgata's expectations and he violated certain Borgata policies and procedures, all of which had occurred during the time period in which he was

employed. Plaintiff had failed to adequately perform his job responsibilities well for the majority of the time he was employed by Borgata.

Plaintiff alleges he was terminated as a result of a back injury he sustained when he slipped and fell at work. Defendant vehemently denies this allegation. The evidence presented in this matter will demonstrate that plaintiff had three instances of poor performance in the very short period of his employment and therefore his continued employment with Borgata was not warranted. Despite plaintiff's assertion, the mere fact that he sustained a back injury does not excuse him from the responsibility of compliance with the Borgata performance standards and policies and procedures.

Plaintiff also alleges that he was not granted light duty following his alleged back injury in June, 2005. This allegation is vehemently denied. Plaintiff did not request to be placed on light duty. While plaintiff's mother had made a request on his behalf, this request was not supported by any medical documentation. In fact, plaintiff had received treatment from Dr. Glenn Zuck of Pace Orthopedics who had concluded that plaintiff was physically able to return to full duty as of June 17, 2005. Borgata is not required to acquiesce to plaintiff's personal preference to work light duty, without the support of medical documentation that states light duty is medically necessary. According to all of the medical documentation in possession of Borgata, plaintiff was physically able to work fully duty as of July 17, 2005 and was not suffering from any physical impairment.

Plaintiff also alleges his employment was terminated in retaliation for pursuing worker's compensation benefits from his July 11, 2005 injury. This assertion is vehemently denied. Plaintiff has been provided all workers' compensation benefits to which he was otherwise entitled, despite the fact that his employment was terminated. Ending the employment of plaintiff did not negatively impact his worker's compensation benefits. The termination of plaintiff's employment was based solely upon his poor performance.

Borgata did not violate any law, statute or regulation when it terminated the employment of plaintiff. Borgata is entitled to require its employees to adhere to specific performance standards and the mere fact that an employee has been injured does not excuse them from that performance requirement or insulate the employee from adverse employment actions such as discipline and/or termination.

**PART II.**     **STIPULATED FACTS:**

1.    Mr. Daniyan applied for a job at Defendant and was hired as a Guest Room Attendant at the Company in April, 2005.

2.    Mr. Daniyan was on a probationary period for his first 90 days of employment.

3.    On or about May 9, 2005, Mr. Daniyan began working as a heavy porter.

4.    On May 7, 2005, Mr. Daniyan injured his shoulder while working at Defendant.

5.    On June 11, 2005, Mr. Daniyan slipped and fell while taking trash out to the loading dock.

6.    Mr. Daniyan was taken to the hospital on June 11, 2005 and was released that same day.

7.    On June 12, 2005, Mr. Kuruvilla contacted Mr. Daniyan via telephone and asked him to bring his paperwork as soon as possible to the medical unit at Defendant.

8.    In an email on June 13, 2005, Susan Hagerty-Guld, Defendant's Workers' Compensation Coordinator, advised that she and a nurse from Medical One called Mr. Daniyan to tell him to return to the medical unit.

9.    On July 18, 2005, Dr. Zuck prescribed Mr. Daniyan for physical therapy four times a week for two weeks.

10.   Dr. Zuck prescribed a sacral donut, a back brace and medications for Mr. Daniyan to take because of his back injury.

11.   Specifically, Dr, Zuck prescribed Mr. Daniyan Motrin, a Medrol Dose Pack, Darvocet and Flexeril.

12.   Mr. Daniyan came into work on June 18, 2005 and he met with Mr. Nicosia who suspended him.

13.   According to the heavy porter job description, a porter "must be able to lift 50 pounds" and "must be able to stand for an entire shift."

14.   Defendant did not provide Mr. Daniyan with any light and/or modified duty after he was injured at work on June 11, 2005.

15.   Mr. Nicosia does not have authority to deny a light-duty request.

16.   Mr. Daniyan was not discharged on or before June 11, 2005.

17.   No other guest room attendants were disciplined from January 1, 2004 to January 1, 2006 for not submitting medical paperwork.

18.   Notwithstanding, Mr. Daniyan was only purportedly disciplined on or about the following dates:  5/14/05 or 5/15/05; 5/21/05; 6/5/05; 6/9/05; 6/17/05; 6/20/05.

**PART III.     PLAINTIFF'S CONTESTED FACTS:**

A.      Mr. Daniyan intends to prove the following contested facts with regard to liability:

1.      Mr. Daniyan applied for a job at Defendant and was hired as a Guest Room Attendant at the Company in or around April 2005.

2.      Mr. Daniyan commenced employment at Defendant on April 18, 2005.  At the end of Mr. Daniyan's probationary period, his performance would purportedly be evaluated.

3.      Mr. Daniyan's 90-day probationary period would have ended on July 17, 2005.

4.      On or about May 9, 2005, Mr. Daniyan was promoted from the guest room attendant position to a heavy porter position.

5.      As a heavy porter, Mr. Daniyan was required to "be able to lift 50 pounds" and to "be able to stand for an entire shift."

6.      The heavy porter job description that addressed Mr. Daniyan's responsibilities did not address any requirements regarding the porter key, where to put dirty laundry when the linen chute was broken, or the proper procedure if an employee needed additional time to complete job tasks.

7.      The guest room attendant job description that set forth Mr. Daniyan's responsibilities contained no requirement regarding the porter key, where to put dirty laundry when the linen chute was broken, or what the procedure was if an employee needed additional time to complete job tasks.

8.      Mr. Daniyan frequently stayed beyond his shift end time to complete his tasks as instructed by his supervisors.  Indeed, Mr. Daniyan worked past 5:30 p.m. on April 30, 2005, May 2, 2005, and May 4, 2005, all without issue or discipline.  To the contrary, Mr. Daniyan was told that he was doing a good job at work.

9.      On May 7, 2005, Mr. Daniyan injured his shoulder while working at Defendant and needed light duty for one day.

10.     Prior to his workplace injury on May 7, 2005 and the resulting need for light duty based on that injury, Mr. Daniyan was never disciplined or reprimanded, either verbally or in writing, and no one ever expressed to Mr. Daniyan any issues with his performance.

11.     Due to this promotion, Mr. Daniyan received a pay raise of $1.24 per hour.

6

12. On May 15, 2005, just one month prior to his unlawful termination, Mr. Daniyan received a memorandum thanking his "hard work" and "volunteering to do a lot of overtime," that was necessary as a result of the broken linen chute.

13. Immediately after Mr. Daniyan's workplace shoulder injury and his request and need for light duty on May 7, 2005, his performance was repeatedly criticized, without basis, by Defendant.

14. Mr. Daniyan's job duties also became more difficult after Defendant's linen chute broke down and could not be used.

15. On May 15, 2005, Mr. Daniyan was told by Mr. Ezzat Hanna, Mr. Daniyan's shift manager, and Alex Macchione, also Mr. Daniyan's shift manager, that due to the broken laundry chute he could leave dirty linen on the floor on the landing (where guests cannot access).

16. Mr. Daniyan's performance was complimented by Santosh Kuruvilla (Manager of the Housekeeping Department), Hanna and Macchione.

17. Despite Mr. Daniyan's stellar work performance, he was given trumped-up warnings for minor infractions in retaliation for his need for light duty. Prior to his shoulder injury, he did not receive any warnings, either written or verbal.

18. Mr. Daniyan was not even presented with certain notices of discipline to have an opportunity to correct or dispute any of the claims made by his supervisors. Indeed, at least one purported disciplinary document regarding "working late" was never even printed from Defendant's computer system until after Mr. Daniyan filed this lawsuit.

19. Mr. Daniyan received a final written warning because he "lost" his porter key. However, his porter key was quickly found within two minutes.

20. Rocco Nicosia, the Housekeeping Manager, received only a written warning when he lost his master key for two days without reporting it.

21. Patricia Castaneda, another employee of Defendant, received only a written warning for losing her key.

22. On June 11, 2005, Mr. Daniyan slipped while attempting to carry a heavy trash bag. He flipped up in the air and landed on his back on the concrete landing.

23. Defendant's inspection at the scene confirmed the floor was wet where Mr. Daniyan fell.

7

24. Rather than supporting Mr. Daniyan, Defendant's management and other workers associated with Defendant were belligerent and demanding of him, despite his injury.

25. Mr. Daniyan was taken to the hospital on June 11, 2005 and diagnosed with a serious back injury.

26. Because of the severity of his injury, Mr. Daniyan was not immediately able to return to work and perform the physical demands of his job and was prescribed numerous medications as a result.

27. Because of the severity of his injury, and the effect of his medication, Mr. Daniyan was unable to immediately call out.

28. When Mr. Daniyan was released from the hospital, the doctors at the hospital advised Mr. Daniyan to stay out of work for two days. Mr. Daniyan was heavily medicated and could not call Defendant at that time.

29. There was no explicit deadline for an injured employee to bring his or her medical documents to Defendant.

30. Nowhere in the nearly one hundred pages of policies in Defendant's Guest Room Attendant Handbook is there any policy that advises its employees of the purported requirement to bring in medical paperwork and/or the hospital discharge documentation after a workplace injury.

31. Likewise, in Defendant's Workers' Compensation policy, nowhere in the section titled, "Injured Associates Responsibilities" does it state that injured employees are required to bring in medical paperwork from the hospital.

32. In an email on June 13, 2005, Susan Hagerty-Guld, Defendant's Workers' Compensation Coordinator, advised that she and a nurse from Medical One, Defendant's medical unit, called Mr. Daniyan to tell him to return to the medical unit with "his papers."

33. However, Sheri Langsdorf, the Unit Manager for the medical unit at Defendant, did not recall requesting Mr. Daniyan to bring in the medical paperwork.

34. Defendant and Medical One share letterhead and Defendant determines the rate of pay for Medical One employees.

35. Despite Mr. Daniyan's medically diagnosed injury, during the week following his disability, managers at Defendant repeatedly telephoned Mr. Daniyan and pressured him to return to work.

36. Mr. Daniyan brought his hospital discharge papers to Defendant on June 13, 2005, but once he advised them he had this documentation, they subjected him to a drug test without any advance notice or explanation.

37. After Mr. Daniyan passed his drug test, he and his mother sensed the disappointment by Defendant's and the Medical Unit's employees who were hoping to use a positive drug test to terminate his employment.

38. Mr. Daniyan was authorized to be out of work June 12, 13 and 14, 2005.

39. Mr. Daniyan objected to Defendant's insistence that he begin working again so soon after his injury.

40. Mr. Daniyan informed Defendant that he was on medication as a result of his back injury that affected his cognition and motor skills and that it was not safe for him or others around him should he return to work at the time.

41. Mr. Daniyan and members of his family on his behalf repeatedly asked for light duty but was summarily denied by Defendant without engaging in any interactive process with him.

42. Mr. Daniyan explained that he was still suffering too much pain from the work-related injury to return.

43. As a result of the workplace injury on June 11, 2005, Mr. Daniyan suffers from, has a record of and/or was regarded as having, a disabling back condition which substantially limited one or more of his major life activities of walking, lifting, sitting, moving, sleeping and working, among others.

44. Mr. Daniyan is a qualified individual with a disability.

45. Mr. Daniyan's back injury prevents the normal exercise of bodily functions and is demonstrable by accepted clinical or laboratory techniques.

46. Dr. Glenn M. Zuck, D.O., Defendant's expert regarding Mr. Daniyan's back disability, admitted that he did not know whether Mr. Daniyan was disabled because of his back injury as of August 1, 2005 and had not examined Mr. Daniyan since July 20, 2005.

47. Dr. Zuck does not focus his practice on back injuries.

48. Dr. Zuck ordered Mr. Daniyan to return to work full duty on June 17, 2005, despite not looking at Mr. Daniyan's x-rays. However, in order to properly evaluate a lower back injury caused by a fall, a doctor needs to look at an x-ray.

9

49. Dr. Zuck testified that for a lower back injury caused by a fall, a doctor needs to look at an x-ray, but not an MRI.

50. Dr. Zuck prescribed a sacral donut, a back brace and four different medications for Mr. Daniyan to take because of his back injury.

51. Specifically, Dr, Zuck prescribed Mr. Daniyan 800 milligrams of Motrin, which is a strong dose of this anti-inflammatory, a Medrol Dose Pack, another anti-inflammatory medication that has side effects of jitteriness and stomach sensitivity, Darvocet, a pain killer, and Flexeril, a muscle relaxer.

52. Mr. Daniyan went to NovaCare Rehabilitation for his physical therapy and his therapist confirmed that Mr. Daniyan was unable to stand or sit on June 17, 2005.

53. As a result of his workplace injury on June 11, 2005, Mr. Daniyan could not perform normal, everyday living. Moreover, he could not bend, sleep or walk.

54. Defendant suspended Mr. Daniyan on June 18, 2005, purportedly because he did not submit "medical paperwork from the hospital."

55. Defendant admitted that it had the discharge paperwork from Atlantic City Medical Center regarding Mr. Daniyan's workplace injury by June 18, 2005.

56. Specifically, Mr. Daniyan came into work on June 18, 2005, and he met with Mr. Nicosia who suspended him. On that same date, Mr. Nicosia received and signed the hospital discharge form, but he suspended Mr. Daniyan anyway.

57. Moreover, even though he issued Defendant's suspension of employment to Mr. Daniyan, Mr. Nicosia did not even know what paperwork Defendant wanted Mr. Daniyan to bring to it.

58. Defendant was already aware of the information contained on the hospital discharge document based on the other documents submitted by Mr. Daniyan and other documents provided to Defendant by its medical staff, the hospital and through workers' compensation insurance.

59. Mr. Nicosia admitted that he received training regarding employees who needed accommodations or light duty because of disabilities only one time during his employment, in 2003.

60. The heavy porter position requires a lot of lifting and physical usage of the body.

61. Specifically, Mr. Daniyan requested light duty from his supervisors, Messrs. Kuruvilla, Nicosia, Macchione and Hanna, but his requests were denied without engaging in any interactive process.

10

62.    According to Ms. Guld, when Mr. Daniyan requested light duty from his supervisors, they were required to advise him to return to the medical unit.

63.    Other supervisors have confirmed that an employee who requested light duty should be referred to the medical unit.

64.    Mr. Macchione testified that an employee cannot ask to be put on light duty.

65.    When an employee requests light duty to the medical unit, someone from the medical unit is supposed to confer with a doctor regarding the employee's condition and request.

66.    Mr. Daniyan's mother repeatedly asked Sheri Langsdorf, the Unit Manager for the medical unit at Defendant, for light duty for her son, which Ms. Langsdorf summarily denied without any further instruction.

67.    Mr. Daniyan's mother told Defendant that Mr. Daniyan wanted to come back to work, but physically could not, nor could he stand or walk at that time.

68.    Ms. Langsdorf told Mr. Daniyan's mother that Defendant had to comply with the doctor's order without speaking with the doctor because the doctor was away on vacation.

69.    Mr. Daniyan's mother tried to call the doctor directly but was not allowed to speak with him.

70.    Mr. Daniyan's injury was serious enough to require Defendant to immediately complete documents for workers' compensation benefits for Mr. Daniyan.

71.    Defendant and its employees were aware that Mr. Daniyan's injury was serious enough to require workers' compensation benefits.

72.    Defendant's employees, including Mr. Nicosia, also were aware that Mr. Daniyan needed workers' compensation benefits at the time of his termination.

73.    Moreover, Defendant also was required to provide Mr. Daniyan with his lost time payment as of June 18, 2005.

74.    Mr. Macchione admitted that he was aware that Mr. Daniyan needed workers' compensation benefits because of his back injury.

75.    Mr. Daniyan was not suspended at any time before June 11, 2005, the last day Mr. Daniyan reported to work and was able and allowed to perform his job duties at Defendant.

76.　　Even though Mr. Daniyan already brought in to Defendant, and/or Defendant's medical unit, all the paperwork from the hospital regarding his workplace injury on June 11, 2005 and on June 17, 18 and 19, 2005, Mr. Daniyan again brought in the hospital's documentation that Defendant had already made copies of.

77.　　Defendant's former Risk Manager, Susan Guld, who was responsible for coordinating with the medical unit and others concerning employees' workers' compensation injuries, confirmed that Defendant had the paperwork it required by June 14, 2005, because Defendant needed that paperwork to complete the medical pass it gave to Mr. Daniyan on that date and that Mr. Daniyan should not have been suspended for failing to provide information or documents regarding his workplace injury.

78.　　Ms. Langsdorf also confirmed that she had all of Mr. Daniyan's paperwork by June 17, 2005.

79.　　Mr. Daniyan's suspension notice does not specify what paperwork Defendant required him to bring in.

80.　　Mr. Daniyan's suspension had nothing to do with his work performance.

81.　　On June 20, 2005, Mr. Daniyan's birthday, Defendant terminated him purportedly because his work performance was not meeting expectations and he "violated certain policies and procedures; including the attendance policy."

82.　　Defendant also asserted to the EEOC that Mr. Daniyan did not report to work on June 17, 18 and 19, 2005, and did not properly call-out on those dates in violation of the Defendant's attendance policy.

83.　　However, Defendant's own records prove that Mr. Daniyan reported to work on June 17, 2005 and June 18, 2005, and on both days Defendant sent him home.

84.　　Defendant admits that Mr. Daniyan was not discharged on or before June 11, 2005, Mr. Daniyan's last day that he worked at Defendant.

85.　　Mr. Macchione was disciplined by Defendant on February 13, 2008, after he was injured on the job, received modified duty and workers' compensation benefits.

86.　　Mr. Hanna was discharged after receiving medical care for an injury.

87.　　Out of the 63 employees in Defendant's housekeeping department who requested workers' compensation benefits, 24 of these employees' were terminated by Defendant.

88.　　Dr. Arthur H. Tiger, M.D. examined Mr. Daniyan's back on January 8, 2008.

12

89.     On January 8, 2008, Dr. Tiger diagnosed Mr. Daniyan with the residuals of chronic lumbosacral strain syndrome with chronic myofascitis, and that he suffered from some loss of the usual lumbar curvature.

90.     Dr. Tiger diagnosed Mr. Daniyan's back injury without an MRI, and the MRI may have demonstrated even greater severity of the injury.

91.     On January 8, 2008, Dr. Tiger concluded that Mr. Daniyan had a lot of discomfort in his back and could not lift, bend, twist, or turn and he had difficulty squatting and kneeling.  According to Dr. Tiger, this disability substantially limited Mr. Daniyan's ability to perform manual labor, exercise and/or lift objects

92.     Mr. Daniyan's back disability reduced his whole body's physical capacities by, at a minimum, 30 percent – possibly greater.

93.     There are different versions of disciplinary notices in connection with Mr. Daniyan's employment.


B.     Mr. Daniyan intends to prove the following contested facts with regard to damages:

1.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, NJLAD and/or N.J. Workers' Compensation law, Mr. Daniyan has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and other benefits for which Defendant is liable.

2.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, NJLAD and/or N.J. Workers' Compensation law, Mr. Daniyan has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity and emotional pain and suffering for which Defendant is liable.

3.     Defendant's unlawful and discriminatory actions constitute malicious willful and wanton violations of the ADA, NJLAD and/or N.J. Workers' Compensation law for which Mr. Daniyan is entitled to an award of punitive damages.

4.     For all of the aforementioned violations of law, Defendant is liable for attorneys' fees and costs in an amount to be determined at trial.

5.     For Defendant's violations of the ADA, NJLAD and/or N.J. Workers' Compensation statutes, Defendant is liable for the aforementioned damages, plus prejudgment interest.

**PART IV:**     **DEFENDANT'S CONTESTED FACTS:**

A.    Defendant intends to prove the following contested facts with regard to liability:

1.    Plaintiff was employed at Tropicana as a guest room attendant from April 18, 2005 to June 20, 2005.

2.    Plaintiff was in a probationary period for the first 90 days of his employment and would be reviewed during that time to see if he would continue to work at Borgata beyond the probationary period.

3.    During that time, the performance of plaintiff, like that of any other associate in his/her probationary period, was carefully monitored.

4.    The employment of the probationary associate would be terminated at any time during the 90 day probationary period if they were unable to achieve the level of performance expected of a Borgata associate.

5.    Plaintiff's employment with Tropicana, his former employer, was terminated for poor performance and failure to successfully complete his probationary period.

6.    Plaintiff was dishonest in his application for employment with Borgata and failed to disclose that he was terminated for failure to successfully complete his probationary period.

7.    Plaintiff lied in his application for employment with Borgata when he stated that he resigned from Tropicana due to conflict with his days off, as he was terminated for failure to successfully complete his probationary period.

8.    Nancy Lorraine, former Manager of the Housekeeping Department at Borgata, interviewed plaintiff for hire and informed the plaintiff as to all of the job duties and responsibilities he would be assigned to with regard to all positions within the department.

9.    Plaintiff was initially hired as a Guest Room Attendant. Plaintiff had to wait for an opening for the position of Heavy Porter before he would be eligible to transfer into that position.  When an opening occurred, plaintiff was transferred to the position of Heavy Porter.

10.    A porter starting hourly wage, by union contract, is higher than the starting hourly wage of a guest room attendant.

11.    Plaintiff did not receive a promotion to the position of Heavy Porter.

12.    Plaintiff was not transferred to the position of Heavy Porter because of positive performance as a Guest Room Attendant.

13.    Plaintiff understood the job duties of a Heavy Porter.

14.    Plaintiff was disciplined on numerous occasions for poor work performance while at the Borgata.

15.    Borgata utilizes a progressive discipline policy.  The level of discipline provided may take into consideration discipline the associate had previously received and utilize a progressive level of discipline for each subsequent occurrence.  Borgata is not required to follow a progressive discipline if the offense warrants a higher level of discipline depending upon the offense.

16.    Plaintiff was not disciplined in retaliation for a workplace injury on May 7, 2005.

17.    Plaintiff was not disciplined in retaliation for requesting or utilizing light duty following a workplace injury on May 7, 2005.

18.    Plaintiff did not provide "stellar" work performance at any time during his employment.

19.    On May 14, 2005 Plaintiff was disciplined for leaving dirty linen on the floors four, five and six and was given a verbal coaching.

20.    It was not proper procedure for porters to leave dirty linen on the floors or landings in any area of Borgata.

21.    Plaintiff was aware that leaving dirty linen on the floor in the halls or landing of Borgata was not proper procedure, at any time and under any circumstances.

22.    Plaintiff was disciplined on May 21, 2005 for poor work performance when he failed to complete his work during his allotted and required time period.

23.    It was not proper procedure for any associate of Borgata to not complete their assigned work within the allotted time period.

24.    Plaintiff was aware of the requirement that all porters complete their assigned work within the allotted time period and that failure to do so would constitute poor performance.

25.    Plaintiff was aware that Borgata associates were only permitted to work beyond their scheduled shift if requested by a Borgata supervisor.  An

15

associate was not permitted to took more time than allocated for a specific task and incur

26. Plaintiff was disciplined on June 9, 2005 for losing his porter key and failing to report same.

27. The porter key is used to access the locked storage areas that are utilized to keep all of the linens and other supplies for the guest rooms. These storage areas are kept locked to safe guard this valuable property.

28. It is Borgata procedure that if a porter key is lost, misplaced or unaccounted for, it is required procedure to immediately report to the associate's supervisor.

29. It is Borgata procedure that a porter key must be kept safeguarded and accounted for at all times.

30. Plaintiff understood the Borgata policy regarding the safeguarding of the porter keys and the requirement to immediately report any lost, misplaced or unaccounted for key.

31. Plaintiff was never personally thanked for "hard work" or "volunteering to work overtime."

32. Plaintiff's job duties did not become more difficult when the linen chute was in disrepair.

33. Rocco Nicosia was beyond his probationary period and/or did not have a prior written warning when he received a written warning for having lost a master key.

34. Patricia Castaneda was beyond her probationary period and/or did not have a prior written warning when she received a written warning for losing a key.

35. Plaintiff was not personally complimented for good work performance.

36. Plaintiff was terminated for failing to successfully complete his probationary period.

37. Plaintiff's supervisors never made any comments to him about his alleged disability or being disabled.

38. Plaintiff understood that when he worked at the Borgata he was required to call out if he was not coming to work due to being sick or injured.

39. Plaintiff understood that if he failed to come to work and did not call out, it was considered a no call-no show.

16

40. On June 11, 2005, plaintiff slipped and fell in the loading dock area at Borgata.

41. On June 11, 2005, plaintiff was transported to Atlantic City Medical Center where he was treated and released that same day.

42. Due to his slip and fall at the Borgata, plaintiff was evaluated by Dr. Glenn Zuck on June 14, 2005 who concluded plaintiff could return to work full duty on June 17, 2005.

43. Plaintiff admits that as of June 12, 2005 he did not call anyone at Borgata to advise anyone that he was supposed to be out of work and that no one knew he was supposed to be out of work.

44. Employees of Borgata did not call plaintiff to pressure him to return to work following his June 11, 2005 injury. Instead, employees of Borgata contacted plaintiff on several occasions to remind him that he needed to bring in, or have someone else bring in, the medical documentation from Atlantic City Medical Center which discharged him from care.

45. It is critically important to have all medical documentation from an associate in relation to their health care to insure that Borgata follows all recommendations as to the associate's return to work and/or job duties and functions. In addition, the medical documentation generated from an associate's health care following a workplace injury must be sent to the workers' compensation insurance carrier.

46. Plaintiff admitted he did not tell his employer that he was medicated following his fall at the Borgata

47. Plaintiff was not taking any prescription medication for his alleged back condition until June 13, 2005.

48. Plaintiff did not provide Borgata any documentation from the Atlantic City Medical Center regarding treatment for his June 11, 2005 workplace injury until June 18, 2005.

49. Borgata did not have any documentation from plaintiff's treatment at the Atlantic City Medical Center regarding his June 11, 2005 workplace injury until after plaintiff was suspended on June 18, 2005.

50. As of June 17, 2005 no one at the Borgata had a copy of the Atlantic City Medical Center paperwork putting him out of work.

51. Upon his return to work from the June 11, 2005 slip and fall, plaintiff was told that he could not have light duty because his treating doctor, Dr. Glenn Zuck, had returned him to work without limitation.

17

52.    Light duty is not permitted unless supported by medical documentation.

53.    Alexander Macchione is a Housekeeping Shift Manager at Borgata.

54.    Mr. Macchione's impression of plaintiff was that he was not a good worker and did not want to do his job on his own.

55.    Santosh Kuruvilla was a Manager in the Housekeeping Department at the Borgata.

56.    Santosh Kuruvilla spoke with plaintiff via phone on June 12, 2005 and on other occasions to advise him to bring his medical documentation regarding his treatment at ACMC to Borgata.

57.    When an employee requests light duty they are sent to the medical unit so they can be medically evaluated and/or their current medical documentation on file can be reviewed.

58.    Rocco Nicosia is employed as a Manager in the Housekeeping Department at the Borgata.

59.    Based upon his observations of plaintiff's performance, Rocco Nicosia felt plaintiff was not a good worker and did not meet the performance standards of Borgata.

60.    Plaintiff was discharged from his employment with Borgata for not successfully completing the probationary period which included work habits, overall poor work performance and some attendance issues.

61.    Sherri Langsdorf was employed by Medical One and was the unit manager for the Medical One medical unit located at the Borgata during the relevant time period.

62.    Medical One is a separate and independent company over which Borgata has no control or direction.

63.    Langsdorf is a Licensed Practical Nurse in the State of New Jersey.

64.    At the time of her deposition in 2008, she could not recall whether in 2005 she had requested plaintiff to bring in his medical paperwork, including hospital discharge papers.

65.    Although plaintiff's mother called Langsdorf and requested light duty for plaintiff, Langsdorf advised that she had two different physicians stating that full duty was appropriate for plaintiff and that she could not override the physician's orders.

18

66.    Dr. Glenn M. Zuck issued a return to work certification dated June 14, 2005 which returned plaintiff to work full duty as of June 17, 2005.

67.    Dr. Arthur Tiger did not examine plaintiff until January 8, 2008 and can not, within a reasonable degree of medical certainty, determine plaintiff's medical condition as of June 20, 2005.

68.    Borgata did not terminate any employee based upon their utilization or claim of worker's compensation benefits.

69.    If an employee at Borgata was terminated following his/her request or utilization of worker's compensation benefits, such termination was based upon independent circumstances, events and/or performance unrelated to the employee's request or utilization of worker's compensation benefits.

70.    Between January 1, 2004 and January 1, 2006, no guest room attendants, other than plaintiff, failed to timely submit medical documentation following a workplace injury.

71.    Mr. Daniyan was taken to the hospital on June 11, 2005 and was treated and released that same day.

72.    On June 12, 2005, Mr. Kuruvilla contacted Mr. Daniyan via telephone and asked him to bring his hospital discharge paperwork as soon as possible to the medical unit at Defendant.

73.    In an email on June 13, 2005, Susan Hagerty-Guld, Defendant's Workers' Compensation Coordinator, advised that she and a nurse from Medical One called Mr. Daniyan to tell him to return to the medical unit with his discharge papers from the hospital.

74.    Mr. Daniyan came into work on June 18, 2005 and he met with Mr. Nicosia who suspended him for failure to bring in his Atlantic City Medical Center discharge paperwork.

75.    Defendant had the discharge paperwork from Atlantic City Medical Center regarding Mr. Daniyan's workplace injury on June 18, 2005, after he was suspended for failure to bring in the paperwork.

76.    Mr. Nicosia does not have authority to deny a light-duty request and never denied a request by plaintiff for light duty.

77.    No other guest room attendants were disciplined from January 1, 2004 to January 1, 2006 for not submitting medical paperwork related to a work place injury in a timely manner, as no other guest room attendants had failed to timely submit such medical paperwork.

B.     Defendant intends to prove the following contested facts with regard to damages:

    1.     Plaintiff did not suffer any monetary or economic damages as a result of defendant's alleged unlawful and discriminatory conduct.

    2.     Plaintiff did not suffer any severe mental anguish or emotional distress as a result of defendant's alleged unlawful and discriminatory conduct.

    3.     Plaintiff is not entitled to an award of punitive damages.

    4.     Defendant is not liable for plaintiff's attorneys' fees and costs.

    5.     Defendant did not violate the ADA, NJLAD or the NJ Workers' Compensation statute and therefore is not liable for any of the damages or interest available thereunder.

## PART V:     WITNESSES and SUMMARY OF TESTIMONY:

Only the witnesses whose names and addresses are listed herein will be permitted to testify at the time of trial. For each witness listed, there must be a description of their testimony. Any objection to a witness must be noted by opposing counsel and for each such witness objected to, the name of the witness and the reason for the objection shall be given.

A.     Plaintiff's Witnesses and Summary of Their Testimony

    1.     Mr. Daniyan intends to call the following witnesses with regard to liability and anticipates they will testify as follows:

    a.     Johan Daniyan
        c/o Thompson Wigdor & Gilly LLP
        85 Fifth Avenue
        New York, NY 10003
        212-257-6800

        Johan Daniyan is expected to testify as follows, including, but not limited to: (a) his employment background, performance and experience with the Defendant; (b) relevant events that occurred at Defendant; (c) his disability/hardship; (d) his request for an accommodation for his disability/hardship; (e) Defendant's denial of his request for an accommodation; (f) the discriminatory and retaliatory treatment he has been subjected to during his employment at Defendant, including, but not limited to, being subjected to discrimination due to his disability; (g) the claims and allegations in the Complaint, including the damages he has suffered; (h) his request and need for workers' compensation benefits and all relevant information regarding his Workers' Compensation claim; and

(i) the effect of Defendant's discriminatory and retaliatory actions upon him.

b.    Joanne Daniyan
      c/o Thompson Wigdor & Gilly LLP
      85 Fifth Avenue
      New York, NY 10003
      212-257-6800

Joanne Daniyan is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience with the Defendant; (b) relevant events that occurred at Defendant; (c) Mr. Daniyan's disability/hardship; (d) Mr. Daniyan's request for an accommodation for his disability/hardship; (e) Defendant's denial of Mr. Daniyan's request for an accommodation; (f) the discriminatory and retaliatory treatment Mr. Daniyan has been subjected to during his employment at Defendant, including, but not limited to, being subjected to discrimination due to his disability; (g) the claims and allegations in the Complaint, including the damages Mr. Daniyan has suffered; (h) Mr. Daniyan's request and need for workers' compensation benefits and all relevant information regarding Mr. Daniyan's Workers' Compensation claim; and (i) the effect of Defendant's discriminatory and retaliatory actions upon Mr. Daniyan.

c.    Ella Simpson
      c/o Thompson Wigdor & Gilly LLP
      85 Fifth Avenue
      New York, NY 10003
      212-257-6800

Ella Simpson is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience with the Defendant; (b) relevant events that occurred at Defendant; (c) Mr. Daniyan's disability/hardship; (d) Mr. Daniyan's request for an accommodation for his disability/hardship; (e) Defendant's denial of Mr. Daniyan's request for an accommodation; (f) the discriminatory and retaliatory treatment Mr. Daniyan has been subjected to during his employment at Defendant, including, but not limited to, being subjected to discrimination due to his disability; (g) the claims and allegations in the Complaint, including the damages Mr. Daniyan has suffered; (h) Mr. Daniyan's request and need for workers' compensation benefits and all relevant information regarding Mr. Daniyan's Workers' Compensation claim; and (i) the effect of Defendant's discriminatory and retaliatory actions upon Mr. Daniyan.

d.    <u>Dr. Arthur H. Tiger</u>
      600 Mount Pleasant Ave # E
      Dover, NJ 07801
      (973) 989-8600

Arthur Tiger is expected to testify as follows, including, but not limited to:
(a) Mr. Daniyan's employment background, performance and experience
with the Defendant; (b) relevant events that occurred at Defendant; (c) Mr.
Daniyan's disability/hardship; (d) Mr. Daniyan's request for an
accommodation for his disability/hardship; (e) Defendant's denial of Mr.
Daniyan's request for an accommodation; (f) the discriminatory and
retaliatory treatment Mr. Daniyan has been subjected to during his
employment at Defendant, including, but not limited to, being subjected to
discrimination due to his disability; (g) the claims and allegations in the
Complaint, including the damages Mr. Daniyan has suffered; (h) Mr.
Daniyan's request and need for workers' compensation benefits and all
relevant information regarding Mr. Daniyan's Workers' Compensation
claim; and (i) the effect of Defendant's discriminatory and retaliatory
actions upon Mr. Daniyan.

e.    <u>Jim Shimp – Physical Therapist</u>
      45 Broad Street
      Elmer, NJ 08318
      (856) 358-6200

Jim Shimp is expected to testify as follows, including, but not limited to:
(a) Mr. Daniyan's employment background, performance and experience
with the Defendant; (b) relevant events that occurred at Defendant; (c) Mr.
Daniyan's disability/hardship; (d) Mr. Daniyan's request for an
accommodation for his disability/hardship; (e) Defendant's denial of Mr.
Daniyan's request for an accommodation; (f) the discriminatory and
retaliatory treatment Mr. Daniyan has been subjected to during his
employment at Defendant, including, but not limited to, being subjected to
discrimination due to his disability; (g) the claims and allegations in the
Complaint, including the damages Mr. Daniyan has suffered; (h) Mr.
Daniyan's request and need for workers' compensation benefits and all
relevant information regarding Mr. Daniyan's Workers' Compensation
claim; and (i) the effect of Defendant's discriminatory and retaliatory
actions upon Mr. Daniyan.

f.    <u>Rocco Nicosia</u> (hostile witness; in person or by deposition transcript)
      (address unknown)

Rocco Nicosia is expected to testify as follows, including, but not limited
to: (a) Mr. Daniyan's employment background, performance and
experience at Defendant; (b) disciplinary events in connection with Mr.

Daniyan's employment; (c) Mr. Daniyan's work-related injuries; (d) Mr. Daniyan's request(s) for a reasonable accommodation; (e) Mr. Daniyan's medical paperwork; (f) Defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination; (g) the claims and allegations in the Complaint; (h) Defendant's policies, practices and procedures regarding linens, the linen chute, porter keys, attendance policies and work-related injuries; and (i) Defendant's policies, practices and procedures.

g.   <u>Susan Hagerty-Guld</u> (hostile witness; in person or by deposition transcript) (address unknown)

Susan Hagerty-Guld is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience at Defendant; (b) disciplinary events in connection with Mr. Daniyan's employment; (c) Mr. Daniyan's work-related injuries; (d) Mr. Daniyan's request(s) for a reasonable accommodation; (e) Mr. Daniyan's medical paperwork; (f) Defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination; (g) the claims and allegations in the Complaint; (h) Defendant's policies, practices and procedures regarding linens, the linen chute, porter keys, attendance policies and work-related injuries; and (i) Defendant's policies, practices and procedures.

h.   <u>Alex Macchione</u> (hostile witness; in person or by deposition transcript) (address unknown)

Alex Macchione is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience at Defendant; (b) disciplinary events in connection with Mr. Daniyan's employment; (c) Mr. Daniyan's work-related injuries; (d) Mr. Daniyan's request(s) for a reasonable accommodation; (e) Mr. Daniyan's medical paperwork; (f) Defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination; (g) the claims and allegations in the Complaint; (h) Defendant's policies, practices and procedures regarding linens, the linen chute, porter keys, attendance policies and work-related injuries; and (i) Defendant's policies, practices and procedures.

i.   <u>Earl Miller - Porter</u> (address unknown)

Earl Miller is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience at Defendant; (b) disciplinary events in connection with Mr. Daniyan's employment; (c) the discriminatory and retaliatory conduct Mr. Daniyan has been subjected to during his employment at Defendant; (d) the claims and allegations in the Complaint; (e) Defendant's policies, practices and procedures; (f) Defendant's policies, practices and procedures regarding

linens, the linen chute, porter keys, attendance policies and work-related injuries; and (g) the effect of Defendant's discriminatory actions upon Mr. Daniyan.

j.   <u>James Woodson - Porter</u>
(address unknown)

James Woodson is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience at Defendant; (b) disciplinary events in connection with Mr. Daniyan's employment; (c) the discriminatory and retaliatory conduct Mr. Daniyan has been subjected to during his employment at Defendant; (d) the claims and allegations in the Complaint; (e) Defendant's policies, practices and procedures; (f) Defendant's policies, practices and procedures regarding linens, the linen chute, porter keys, attendance policies and work-related injuries; and (g) the effect of Defendant's discriminatory actions upon Mr. Daniyan.

k.   <u>Thai Lee - Porter</u>
(address unknown)

Thai Lee is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience at Defendant; (b) disciplinary events in connection with Mr. Daniyan's employment; (c) the discriminatory and retaliatory conduct Mr. Daniyan has been subjected to during his employment at Defendant; (d) the claims and allegations in the Complaint; (e) Defendant's policies, practices and procedures; (f) Defendant's policies, practices and procedures regarding linens, the linen chute, porter keys, attendance policies and work-related injuries; and (g) the effect of Defendant's discriminatory actions upon Mr. Daniyan.

l.   <u>Levi Bailey - Porter</u>
(address unknown)

Levi Bailey is expected to testify as follows, including, but not limited to: (a) Mr. Daniyan's employment background, performance and experience at Defendant; (b) relevant events that occurred at Defendant; (c) the discriminatory and retaliatory conduct Mr. Daniyan has been subjected to during his employment at Defendant; (d) the claims and allegations in the Complaint; (e) Defendant's policies, practices and procedures; (f) Defendant's policies, practices and procedures regarding linens, the linen chute, porter keys, attendance policies and work-related injuries; and (g) the effect of Defendant's discriminatory actions upon Mr. Daniyan.

m.    Richard Milanes - Porter
      (address unknown)

      Richard Milanes is expected to testify as follows, including, but not
      limited to: (a) Mr. Daniyan's employment background, performance and
      experience at Defendant; (b) relevant events that occurred at Defendant;
      (c) the discriminatory and retaliatory conduct Mr. Daniyan has been
      subjected to during his employment at Defendant; (d) the claims and
      allegations in the Complaint; (e) Defendant's policies, practices and
      procedures; (f) Defendant's policies, practices and procedures regarding
      linens, the linen chute, porter keys, attendance policies and work-related
      injuries; and (g) the effect of Defendant's discriminatory actions upon Mr.
      Daniyan.

n.    Enrique Vargas - Porter
      (address unknown)

      Enrique Vargas is expected to testify as follows, including, but not limited
      to: (a) Mr. Daniyan's employment background, performance and
      experience at Defendant; (b) relevant events that occurred at Defendant;
      (c) the discriminatory and retaliatory conduct Mr. Daniyan has been
      subjected to during his employment at Defendant; (d) the claims and
      allegations in the Complaint; (e) Defendant's policies, practices and
      procedures; (f) Defendant's policies, practices and procedures regarding
      linens, the linen chute, porter keys, attendance policies and work-related
      injuries; and (g) the effect of Defendant's discriminatory actions upon Mr.
      Daniyan.

2.    Mr. Daniyan intends to call the following witnesses with regard to
      damages and anticipates they will testify as follows:

a.    Johan Daniyan
      c/o Thompson Wigdor & Gilly LLP
      85 Fifth Avenue, Fifth Floor
      New York, NY 10003
      212-257-6800

      Johan Daniyan is expected to testify as follows with regard to damages,
      including, but not limited to: (a) Defendant's unlawful, discriminatory
      and/or retaliatory conduct against him in violation of the ADA, NJLAD
      and/or NJ Workers' Compensation law; (b) the monetary and/or economic
      damages he has suffered, including, but not limited to loss of past and
      future income, prejudgment interest, compensation and all other benefits
      for which Defendant is liable; (c) the severe mental anguish and emotional
      distress he has suffered, including, but not limited to depression,
      humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-
      confidence and personal dignity and emotional pain and suffering for

25

which Defendant is liable; and (d) any and all other claims and allegations in the Complaint.

b.  Joanne Daniyan
c/o Thompson Wigdor & Gilly LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
212-257-6800

Joanne Daniyan is expected to testify as follows with regard to damages, including, but not limited to: (a) Defendant's unlawful, discriminatory and/or retaliatory conduct against Mr. Daniyan in violation of the ADA, NJLAD and/or NJ Workers' Compensation law; (b) the monetary and/or economic damages Mr. Daniyan has suffered, including, but not limited to loss of past and future income, prejudgment interest, compensation and all other benefits for which Defendant is liable; (c) the severe mental anguish and emotional distress Mr. Daniyan has suffered, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity and emotional pain and suffering for which Defendant is liable; and (d) any and all other claims and allegations in the Complaint.

c.  Ella Simpson
c/o Thompson Wigdor & Gilly LLP
85 Fifth Avenue, Fifth Floor
New York, NY 10003
212-257-6800

Ella Simpson is expected to testify as follows with regard to damages, including, but not limited to: (a) Defendant's unlawful, discriminatory and/or retaliatory conduct against Mr. Daniyan in violation of the ADA, NJLAD and/or NJ Workers' Compensation law; (b) the monetary and/or economic damages Mr. Daniyan has suffered, including, but not limited to loss of past and future income, prejudgment interest, compensation and all other benefits for which Defendant is liable; (c) the severe mental anguish and emotional distress Mr. Daniyan has suffered, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity and emotional pain and suffering for which Defendant is liable; and (d) any and all other claims and allegations in the Complaint.

d.  Dr. Arthur H. Tiger
600 Mount Pleasant Ave # E
Dover, NJ 07801
(973) 989-8600

Arthur Tiger is expected to testify as follows with regard to damages, including, but not limited to: (a) Defendant's unlawful, discriminatory and/or retaliatory conduct against Mr. Daniyan in violation of the ADA, NJLAD and/or NJ Workers' Compensation law; (b) the monetary and/or economic damages Mr. Daniyan has suffered, including, but not limited to loss of past and future income, prejudgment interest, compensation and all other benefits for which Defendant is liable; (c) the severe mental anguish and emotional distress Mr. Daniyan has suffered, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity and emotional pain and suffering for which Defendant is liable; and (d) any and all other claims and allegations in the Complaint.

3.    Mr. Daniyan intends to introduce the following portions of deposition transcripts as follows:

| ROCCO NICOSIA DEPOSITION DESIGNATIONS (Transcript Citations) |
|---|
| 10:13 – 11:10 |
| 29:2 – 23 |
| 34:6 – 35:16 |
| 36:1 – 18 |
| 36:23 – 37:6 |
| 37:12 – 17 |
| 41:16 – 44:7 |
| 45:15 – 18 |
| 49:2 – 11 |
| 52:25 – 53:11 |
| 55:3 – 12 |
| 57:5 – 8 |
| 59:4 – 16 |
| 60:10 – 62:25 |
| 64:18 – 65:23 |
| 66:14 – 24 |
| 68:17 – 69:9 |
| 72:24 – 73:5 |
| 77:15 – 78:4 |
| 81:3 – 82:5 |
| 83:10 – 12 |
| 84:6 – 24 |
| 87:22 – 92:17 |
| 94:21 – 95:11 |

| SUSAN HAGERTY-GULD DEPOSITION DESIGNATIONS (Transcript Citations) |
| --- |
| 17:23 – 18:10 |
| 24:7 – 13 |
| 29:12 – 19 |
| 39:8 – 18 |
| 69:2 – 22 |
| 71:11 – 72:18 |

| ALEXANDER MACCHIONE DEPOSITION DESIGNATIONS (Transcript Citations) |
| --- |
| 24:16 – 23 |
| 31:16 – 31:22 |
| 38:3 – 41:24 |
| 48:23 – 49:11 |
| 52:2 – 6 |
| 59:13 – 25 |
| 65:24 – 66:4 |
| 69:7 – 24 |
| 74:21 – 75:5 |

B.    <u>Defendant's Objections to Plaintiff's Witnesses:</u> If there are no objections to any of the witnesses, Defendant shall so state that in this portion of the Order.  If there are objections to any of Mr. Daniyan's witnesses, they shall be listed here.

<u>Joanne Daniyan:</u>  Defendant objects to the proposed testimony of this witness regarding (a), (b), (c), (d), (e), (f), (g), (h), (i) as each calls for the witness to testify about information that is hearsay and/or about which the witness is not competent to testify. Specifically, Mrs. Daniyan has not employed plaintiff and therefore can no testify regarding his employment performance and experience.  In addition, this witness's knowledge of "relevant events" that occurred at Borgata would be hearsay unless personally observed.  Mrs. Daniyan is proposed to testify regarding the exact subject areas as plaintiff and her testimony should not include hearsay testimony or information not within her own personal knowledge.

<u>Ella Simpson:</u>  Defendant objects to the proposed testimony of this witness regarding (a), (b), (c), (d), (e), (f), (g), (h), (i) as each calls for the witness to testify about information that is hearsay and/or about which the witness is not competent to testify.  Specifically, Mrs. Simpson has not employed plaintiff and therefore can no testify regarding his employment performance and experience.  In addition, this witness's knowledge of "relevant events" that occurred at Borgata would be hearsay unless personally observed. Mrs. Simpson is proposed to testify regarding the exact subject areas as plaintiff and her testimony should not include hearsay testimony or information not within her own personal knowledge.

28

<u>Dr. Arthur Tiger</u>:  Dr. Tiger is not competent to offer testimony regarding plaintiff's employment background, performance and experience with Borgata, "relevant events" that occurred at Borgata, plaintiff's request for an accommodation; the denial of plaintiff's request for an accommodation, the alleged discriminatory or retaliatory treatment of plaintiff, the claims contained in plaintiff's complaint, plaintiff's request for worker's compensation benefits or defendant's alleged discriminatory and retaliatory actions against plaintiff.  Defendant objects to any testimony of Dr. Tiger other than with respect to his examination of plaintiff in 2008.

<u>Jim Shimp</u>:  Defendant objects to any testimony offered by Mr. Shimp, with respect to the following subjects, as he does not possess personal knowledge of that information: plaintiff's employment background, performance and experience with the Defendant, relevant events that occurred at Borgata, plaintiff's "disability" as defendant disputes that plaintiff's injuries constituted a disability, plaintiff's alleged request for an accommodation for his "disability", Borgata's denial of plaintiff's request for an accommodation, the alleged discriminatory and retaliatory treatment plaintiff has allegedly been subjected to during his employment at Borgata, the claims and allegations in plaintiff's complaint, plaintiff's request for worker's compensation benefits, the alleged effect of Borgata's alleged discriminatory and retaliatory actions upon plaintiff.

<u>Rocco Nicosia</u>:  Defendant objects to Mr. Nicosia being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist.  Mr. Nicosia is able to testify regarding the reason for Mr. Daniyan's termination from employment with Borgata.

<u>Susan Hagerty-Guld</u>:  Defendant objects to use of Ms. Hagerty-Guld's deposition testimony at the time of trial without sufficient documentation to establish that she is unavailable to testify.  Defendant further objects to Ms. Hagerty-Guld being offered to discuss plaintiff's employment background, performance and experience at Borgata as she was not employed in his department and does not have any personal knowledge regarding same.  .  Defendant objects to Ms. Hagerty-Guld being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist.  Ms. Hagerty-Guld was not employed in plaintiff's department and was not a participant in the decision to terminate plaintiff from employment with Borgata and therefore is not competent to testify with respect to this issue.

<u>Alex Macchione</u>:  Defendant objects to the use of Mr. Macchione to testify regarding plaintiff's employment background and experience.  Mr. Macchione supervised plaintiff during his employment with Borgata and does not have knowledge regarding plaintiff's employment background other than that at Borgata.  Defendant objects to Mr. Macchione being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist.  Finally, while Mr. Macchione was not involved in the decision to terminate the employment of plaintiff and therefore can not testify as to that issue he can testify regarding plaintiff's performance during his employment with Borgata.

29

<u>Earl Miller</u>:  Defendant objects to any testimony of Mr. Miller beyond information based upon his own observations and personal knowledge.  Defendant is unable to determine if an objection will be articulated regarding Mr. Miller's testimony regarding "disciplinary events that occurred at Defendant" until these events are described with more particularity.  Specifically, upon information and belief, Mr. Miller does not possess any personal knowledge regarding disciplinary action issued to plaintiff while employed by Borgata.  Defendant objects to Mr. Miller being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist and Mr. Miller was not involved in nor participated in the termination of plaintiff's employment.  Defendant further objects to Mr. Miller's testimony as to the claims and allegations of plaintiff's complaint, the "effect" of Borgata's alleged "discriminatory actions' upon Mr. Daniyan, as same is hearsay, other than his own personal observations.

<u>James Woodson</u>:   Defendant objects to any testimony of Mr. Woodson beyond information based upon his own observations and personal knowledge.  Defendant is unable to determine if an objection will be articulated regarding Mr. Woodson's testimony regarding "disciplinary events that occurred at Defendant" until these events are described with more particularity.  Specifically, upon information and belief, Mr. Woodson does not possess any personal knowledge regarding disciplinary action issued to plaintiff while employed by Borgata.  Defendant objects to Mr. Woodson being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist and Mr. Woodson was not involved in nor participated in the termination of plaintiff's employment.  Defendant further objects to Mr. Woodson testimony as to the claims and allegations of plaintiff's complaint, the "effect" of Borgata's "discriminatory actions' upon Mr. Daniyan, as same is hearsay, other than his own personal observations.

<u>Thai Lee</u>:  Defendant objects to any testimony of Mr. Lee beyond information based upon his own observations and personal knowledge.  Defendant is unable to determine if an objection will be articulated regarding Mr. Lee's testimony regarding "disciplinary events that occurred at Defendant" until these events are described with more particularity.  Specifically, upon information and belief, Mr. Lee does not possess any personal knowledge regarding disciplinary action issued to plaintiff while employed by Borgata.  Defendant objects to Mr. Lee being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist and Mr. Lee was not involved in nor participated in the termination of plaintiff's employment.  Defendant further objects to Mr. Lee's testimony as to the claims and allegations of plaintiff's complaint, the "effect" of Borgata's "discriminatory actions' upon Mr. Daniyan, as same is hearsay, other than his own personal observations.

<u>Levi Bailey</u>:  Defendant objects to any testimony of Mr. Bailey beyond information based upon his own observations and personal knowledge.  Defendant is unable to determine if an objection will be articulated regarding Mr. Bailey testimony regarding "disciplinary events that occurred at Defendant" until these events are described with more

particularity. Specifically, upon information and belief, Mr. Bailey does not possess any personal knowledge regarding disciplinary action issued to plaintiff while employed by Borgata. Defendant objects to Mr. Bailey being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist and Mr. Bailey was not involved in nor participated in the termination of plaintiff's employment. Defendant further objects to Mr. Bailey testimony as to the claims and allegations of plaintiff's complaint, the "effect" of Borgata's "discriminatory actions' upon Mr. Daniyan, as same is hearsay, other than his own personal observations.

Richard Milanes: Defendant objects to any testimony of Mr. Milanes beyond information based upon his own observations and personal knowledge. Defendant is unable to determine if an objection will be articulated regarding Mr. Milanes testimony regarding "disciplinary events that occurred at Defendant" until these events are described with more particularity.Specifically, upon information and belief, Mr. Bailey does not possess any personal knowledge regarding disciplinary action to plaintiff while employed by Borgata. Defendant objects to Mr. Milanes being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist and Mr. Milanes was not involved in nor participated in the termination of plaintiff's employment. Defendant further objects to Mr. Milanes testimony as to the claims and allegations of plaintiff's complaint, the "effect" of Borgata's "discriminatory actions' upon Mr. Daniyan, as same is hearsay, other than his own personal observations.

Enrique Vargas: Defendant objects to any testimony of Mr. Vargas beyond information based upon his own observations and personal knowledge. Defendant is unable to determine if an objection will be articulated regarding Mr. Vargas testimony regarding "disciplinary events that occurred at Defendant" until these events are described with more particularity. Specifically, upon information and belief, Mr. Bailey does not possess any personal knowledge regarding disciplinary action issued to plaintiff while employed by Borgata. . Defendant objects to Mr. Vargas being offered to testify regarding "defendant's discriminatory and retaliatory reasons for Mr. Daniyan's termination" as no such discriminatory and retaliatory reasons exist and Mr. Vargas was not involved in nor participated in the termination of plaintiff's employment. Defendant further objects to Mr. Vargas testimony as to the claims and allegations of plaintiff's complaint, the "effect" of Borgata's "discriminatory actions' upon Mr. Daniyan, as same is hearsay, other than his own personal observations.

**Defendant's Objections as to Plaintiff's damages witnesses:**
Johan Daniyan

Defendant objects to plaintiff's testimony regarding future lost wages and prejudgment interest. Plaintiff is not competent to testify regarding future lost wages and expert testimony is necessary to submit this issue to a jury. Defendant further objects to plaintiff's testimony regarding past lost wages as same is speculative and more prejudicial than probative, as plaintiff did not seek employment in a field comparable to his position at Borgata and instead went to school to be a massage therapist and has only

sought employment in that field.  In addition, he claims he has been physically unable to work and has been collecting disability, which would further disqualify him from a claim for past lost wages as a matter of law.

<u>Joanne Daniyan</u>
        Defendant objects to Mrs. Daniyan's testimony regarding plaintiff's mental anguish and alleged aspects of emotional distress beyond that personally observed. Defendant objects to plaintiff's testimony regarding future lost wages and prejudgment interest.  Mrs. Daniyan is not competent to testify regarding future lost wages and expert testimony is necessary to submit this issue to a jury.  Defendant further objects to Mrs. Daniyan's testimony regarding past lost wages as same is speculative and more prejudicial than probative for the reasons set forth above.  For the reasons set forth above, Mrs. Daniyan is not competent to testify regarding alleged discrimination and retaliation against plaintiff other than her own personal observations.

<u>Ella Simpson</u>
        Defendant objects to Mrs. Simpson's testimony regarding plaintiff's mental anguish and alleged aspects of emotional distress beyond that personally observed. Defendant objects to plaintiff's testimony regarding future lost wages and prejudgment interest.  Mrs. Simpson is not competent to testify regarding future lost wages and expert testimony is necessary to submit this issue to a jury.  Defendant further objects to Mrs. Simpson's testimony regarding past lost wages as same is speculative and more prejudicial than probative for the reasons set forth above.  For the reasons set forth above, Mrs. Simpson is not competent to testify regarding alleged discrimination and retaliation against plaintiff other than her own personal observations.

<u>Dr. Arthur Tiger</u>
        A separate motion in limine will be submitted to address the scope of Dr. Tiger's trial testimony.  Defendant will object to all testimony of Dr. Tiger other than his personal observations made during physical examination.

**Defendant's Objections as to Plaintiff's deposition transcript designations**:
        Defendant objects to the use of deposition testimony from Rocco Nicosia, Susan Haggerty-Guld, and Alexander Macchione, as these individuals are available and should be produced as live witnesses at trial.  Until these witnesses testify at trial, defendant can not make a determination as to whether the designated testimony would be duplicative of their trial testimony.

C.      <u>Defendant's Witnesses and Summary of Their Testimony</u>

        1.      Defendant intends to call the following witnesses with regard to liability and anticipates they will testify as follows:

        a       Rocco Nicosia, Housekeeping Manager
                c/o Borgata Hotel Casino & Spa
                Atlantic City, New Jersey

32

Mr. Nicosia will testify regarding Borgata's policies and procedures and specifically the performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination.  Mr. Nicosia will also testify regarding plaintiff's employment and performance while employed by Borgata and termination.

b.  Santosh Kuruvilla, former Manager of Borgata Housekeeping   Department: Debai, India

Mr. Kuruvilla will testify regarding Borgata's policies and procedures and specifically the performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination. Mr. Kuruvilla will testify regarding plaintiff's employment and performance while employed by Borgata and termination

c.  Mira Zaras, Director of Housekeeping for Borgata:
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey

Ms. Zaras will testify regarding Borgata's policies and procedures and specifically the performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination. Ms. Zaras will also testify regarding plaintiff's employment and performance while employed by Borgata and termination.

d.  Harry Flores, Security Shift Manager for Borgata:
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey

Mr. Flores will testify regarding the investigation into plaintiff's worker's compensation claim, as set forth in the Borgata incident report at D-13.

e.  Ezzat Hanna, Housekeeping Shift Manager:
PO Box 1215
Brigantine, NJ 08203

Mr. Hanna has will testify regarding Borgata's policies and procedures and specifically the performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination. Mr. Hanna will testify regarding plaintiff's performance while employed by Borgata.

f.  Alexander Macchione, Housekeeping Shift Manager Borgata:
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey

Mr. Macchione will testify regarding Borgata's policies and procedures and specifically the performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination. Mr. Macchione will testify regarding plaintiff's performance while employed by Borgata.  He will also testify regarding plaintiff's June 11, 2005 incident and the events that followed.

g.  Sandra Becker, Risk Management Borgata:
c/o Borgata Hotel Casino & Spa

33

Atlantic City, New Jersey
Ms. Becker will testify regarding Borgata's policies and procedures regarding worker's compensation and workplace injuries. She will also testify regarding the investigation into plaintiff's worker's compensation claim.

h.   Victor Vega, Security Supervisor Borgata:
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey
Mr. Flores will testify regarding the investigation into plaintiff's worker's compensation claim, as specifically set forth in the Borgata Incident report, D-13.

i.   L. Thomas, Nurse of Borgata Medical Unit:
Medical One
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey
Ms. Thomas will testify plaintiff's medical treatment at the Borgata Medical Unit.

j.   Arlene Arcara, Nurse of Borgata Medical Unit:
Medical One
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey
Ms. Arcara will testify regarding plaintiff's medical treatment at the Borgata Medical Unit.

k.   Karen Brundage-Johnson, Borgata Director of Talent Relations Management/Diversity:
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey
Ms. Brundage-Johnson will testify regarding the policies and procedures of Borgata concerning the employment policies and procedures, including accommodations for disability in the workplace. She will also testify regarding plaintiff's termination meeting.

l.   Susan Haggerty Guld, former Risk Management/Worker's Compensation Department of Borgata:
407 Alpine Court
Mays Landing, New Jersey 08330
Ms. Haggerty Guld will testify regarding plaintiff's June, 2005 claim of workplace injury, the Borgata polices and procedures regarding workplace injuries and the Borgata associates' return to work.

m.   William Freese, Risk Manager
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey

34

Mr. Freese will testify regarding the Borgata policies and procedures regarding drug testing, workplace injuries, light duty and an associate's return to work.  He will also testify regarding worker's compensation claims at Borgata.

     n.  Nancy Lorraine, former Housekeeping Manager
c/o Borgata Hotel Casino & Spa
Atlantic City, New Jersey
Ms. Lorraine will testify regarding plaintiff's interview for a position with the Housekeeping Department, the job descriptions detailed and plaintiff and awaiting allocation for the position of Heavy Porter within the Housekeeping Department.

     o. Jim Shimp, Physical Therapist
209 Portchtown Road
Elmer, New Jersey
Mr. Shimp will testify regarding plaintiff's physical therapy treatment at NovaCare and his medical condition upon discharge from treatment.

    2.     Defendant intends to call the following witnesses with regard to damages and anticipates they will testify as follows:

a. Dr. Glenn Zuck:
Pace Orthopedics
Somers Point, New Jersey
Dr. Zuck will testify consistent with his expert opinion submitted with respect to this matter.  In summary, Dr. Zuck will testify that he examined plaintiff on June 14, 2005 and that he was cleared to return to work full duty.  Dr. Zuck will also testify that plaintiff was physically able to perform the job duties of a heavy porter at the time he was cleared to return to work at Borgata.

    3.     Defendant intends to introduce the following portions of deposition transcripts as follows:
At this time defendant intends to introduce all witnesses live at the time of trial.  Defendant is not aware at this time that any of the witnesses in this case are unavailable for trial.  Defendant will designate deposition testimony to be read to the jury for unavailable witnesses within the pretrial submissions to the court.  Defendant will determine any additional deposition to be read at trial based upon testimony offered at the time of trial.

D.    <u>Plaintiff's Objections to Defendant's Witnesses:</u> If there are no objections to any of the witnesses, Mr. Daniyan shall so state that in this portion of the Order. If there are objections to any of Defendant's witnesses, they shall be listed here.

Mr. Daniyan objects to the testimony of Defendant's witnesses as follows:

a. **Rocco Nicosia**:
Mr. Daniyan objects to the proposed testimony of this witness to the extent it is beyond his first hand knowledge.  Any testimony regarding the "performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination" would be hearsay unless personally observed.  Moreover, Mr. Daniyan objects to any purported "failure" because no such "failure" exists.  Mr. Nicosia is proposed to testify regarding the exact subject areas as Mr. Kuruvilla, Ms. Zaras, Mr. Hanna and Mr. Macchione, and as such his testimony will be cumulative and should not include hearsay or information not within his personal knowledge.

b. **Santosh Kuruvilla**:
Mr. Daniyan objects to the proposed testimony of this witness to the extent it is beyond his first hand knowledge.  Any testimony regarding the "performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination" would be hearsay unless personally observed.  Moreover, Mr. Daniyan objects to any purported "failure" because no such "failure" exists.  Mr. Kuruvilla is proposed to testify regarding the exact subject areas as Mr. Nicosia, Ms. Zaras, Mr. Hanna and Mr. Macchione, and as such his testimony will be cumulative and should not include hearsay or information not within his personal knowledge.

c. **Mira Zaras**:
Mr. Daniyan objects to the proposed testimony of this witness to the extent it is beyond her first hand knowledge.  Any testimony regarding the "performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination" would be hearsay unless personally observed.  Moreover, Mr. Daniyan objects to any purported "failure" because no such "failure" exists.  Ms. Zaras is proposed to testify regarding the exact subject areas as Mr. Kuruvilla, Mr. Nicosia, Mr. Hanna and Mr. Macchione, and as such her testimony will be cumulative and should not include hearsay or information not within her personal knowledge.

d. **Harry Flores**:
Mr. Daniyan objects to the testimony of this witness to the extent it is beyond his first hand knowledge.  Mr. Flores is proposed to testify regarding the exact same subject areas as Ms. Becker and Mr. Vega, and as such his testimony will be cumulative and should not include hearsay or information not within his personal knowledge.

e. **Ezzat Hanna**:
Mr. Daniyan objects to the proposed testimony of this witness to the extent it is beyond his first hand knowledge.  Any testimony regarding the

36

"performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination" would be hearsay unless personally observed.  Moreover, Mr. Daniyan objects to any purported "failure" because no such "failure" exists.  Mr. Hanna is proposed to testify regarding the exact subject areas as Mr. Nicosia, Mr. Kuruvilla, Ms. Zaras, and Mr. Macchione, and as such his testimony will be cumulative and should not include hearsay or information not within his personal knowledge.

f.    **Alexander Macchione**:
Mr. Daniyan objects to the proposed testimony of this witness to the extent it is beyond his first hand knowledge.  Any testimony regarding the "performance and attendance standards that plaintiff failed to meet and that resulted in plaintiff's termination" would be hearsay unless personally observed.  Moreover, Mr. Daniyan objects to any purported "failure" because no such "failure" exists.  Mr. Macchione is proposed to testify regarding the exact subject areas as Mr. Nicosia, Mr. Kuruvilla, Ms. Zaras, and Mr. Hanna, and as such his testimony will be cumulative and should not include hearsay or information not within his personal knowledge. Mr. Daniyan objects to any testimony that includes hearsay or information not within his personal knowledge including any events occurring on or about June 11, 2005.

g.    **Sandra Becker**:
Mr. Daniyan objects to the testimony of this witness to the extent it is beyond her first hand knowledge.  Mr. Daniyan reserves his right to object to testimony "regarding the investigation into plaintiff's worker's compensation claim."  Ms. Becker is proposed to testify regarding the exact same subject areas as Mr. Flores and Mr. Vega, and as such her testimony will be cumulative and should not include hearsay or information not within her personal knowledge.

h.    **Victor Vega**:
Mr. Daniyan objects to the testimony of this witness to the extent it is beyond his first hand knowledge.  Mr. Vega is proposed to testify regarding the exact same subject areas as Mr. Flores and Ms. Becker, and as such his testimony will be cumulative and should not include hearsay or information not within his personal knowledge.

i.    **L. Thomas, Nurse of Borgata Medical Unit**:
Mr. Daniyan objects to L. Thomas' testimony regarding "plaintiff's medical treatment at the Borgata Medical Unit" as same is hearsay, unless personally observed by L. Thomas.  Defendant also objects to the extent that Defendant intends to present any expert opinions on diagnoses through this witness who has neither properly been designated as an expert nor prepared an expert report.

j.   **Arlene Arcara, Nurse of Borgata Medical Unit**:
Mr. Daniyan objects to Ms. Arcara's testimony regarding "plaintiff's medical treatment at the Borgata Medical Unit" as same is hearsay, unless personally observed by Ms. Arcara. Defendant also objects to the extent that Defendant intends to present any expert opinions on diagnoses through this witness who has neither properly been designated as an expert nor prepared an expert report.

k.   **Karen Brundage-Johnson**:
Mr. Daniyan objects to Ms. Brundage-Johnson's testimony regarding "the policies and procedures of Borgata concerning the employment policies and procedures." Such testimony is duplicative, confusing, cumulative, and any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue and/or would mislead the jury. Mr. Daniyan objects to any testimony "regarding plaintiff's termination meeting" beyond those events personally observed and/or personally stated by Ms. Brundage-Johnson as same would be hearsay.

l.   **Susan Hagerty Guld**:
Mr. Daniyan objects to Ms. Hagerty-Guld's testimony regarding "plaintiff's June, 2005 claim of workplace injury" as Ms. Hagerty-Guld did not witness Mr. Daniyan's workplace injury. Therefore, testimony regarding same is hearsay, other than her own personal observations.

m.   **William Freese**:
Mr. Daniyan reserves his right to object to Mr. Freese's testimony regarding "worker's compensation claims at Borgata" until it is described with more particularity. Mr. Daniyan objects to any testimony beyond that personally observed and/or personally stated by Mr. Freese, as same would be hearsay.

n.   **Nancy Lorraine, former Housekeeping Manager**
Mr. Daniyan objects to the proposed testimony of this witness to the extent it is beyond her first hand knowledge. Any testimony regarding "plaintiff's interview for a position with the Housekeeping Department, the job descriptions detailed and plaintiff and awaiting allocation for the position of Heavy Porter within the Housekeeping Department" would be hearsay unless personally observed.

o.   **Jim Shimp, Physical Therapist**
Mr. Daniyan objects to the extent that this witness is not qualified to provide an opinion on Mr. Daniyan's medical condition.

**Mr. Daniyan's objections to Defendant's damage witnesses:**

1.    **Dr. Glenn Zuck**:

Mr. Daniyan reserves the right to submit a separate motion in limine to address the scope of Dr. Zuck's trial testimony. Mr. Daniyan objects to all testimony of Dr. Zuck regarding damages other than his personal observations made during physical examination. Mr. Daniyan also objects to all testimony regarding Dr. Zuck's opinion on Mr. Daniyan's ability "to perform the job duties of a heavy porter" as Dr. Zuck was never employed by Defendant nor does he purport to be an expert on "heavy porters."

**Mr. Daniyan's objections to Defendant's deposition transcript designations**:

Defendant has not designated deposition transcripts per the Court's direction. Therefore, Defendant has waived its opportunity to introduce deposition testimony. Mr. Daniyan reserves his right to object and/or make a motion to preclude in the event Defendant attempts to designate later.

**PART VI.    EXPERT WITNESSES:**

Any prior Scheduling Order of the court concerning experts is applicable to this action and the directives of the Scheduling Order shall govern expert testimony in this case. Any expert not listed in this portion of the Final Pretrial Order shall not be permitted to testify at the time of trial. Additionally, the curriculum vitae of every expert expected to testify at the time of trial shall be attached to this Final Pretrial Order. The curriculum vitae or summary of the expert's qualifications may be read into the record at the time the expert takes the stand, and no opposing counsel shall be permitted to question the qualifications of the expert unless the basis of the objection is set forth in this Final Pretrial Order. No expert will be permitted to testify at trial unless all opposing counsel have received the curriculum vitae of the expert and the information required by Fed. R. Civ. P. 26(a)(2) as directed in the Scheduling Order.

If any hypothetical questions are to be put to an expert witness on direct examination, they shall be written in advance and submitted to the court and counsel prior to commencement of trial.

1.    Plaintiff's expert witnesses are:

a.    <u>Dr. Arthur H. Tiger</u>
600 Mount Pleasant Ave # E
Dover, NJ 07801
(973) 989-8600

Dr. Tiger may testify as follows, including, but not limited to: (a) Mr. Daniyan's back injury and disability; and (b) the claims and allegations in

39

the Complaint, including the damages he has suffered.  Dr. Tiger's curriculum vitae is attached hereto.

2.      Defendant's objection to the qualifications of Mr. Daniyan's expert witnesses are: (The objections shall be referenced to the name of each listed expert.)

a.      Defendant objects to the scope and substance of testimony offered by Dr. Arthur Tiger.  Defendant does not object to the qualifications of Dr. Tiger. A separate motion in limine will be submitted to address this issue.

3.      Defendant's expert witnesses are:

a.      <u>Dr. Glenn Zuck:</u>
        Pace Orthopedics
        Somers Point, New Jersey

        Dr. Zuck will testify consistent with his expert opinion submitted with respect to this matter.  In summary, Dr. Zuck will testify that he examined plaintiff on June 14, 2005 and that he was cleared to return to work full duty.  Dr. Zuck will also testify that plaintiff was physically able to perform the job duties of a heavy porter at the time he was cleared to return to work at Borgata.

4.      Mr. Daniyan's objections to the qualifications of Defendant's expert witnesses are: (The objections shall be referenced to the name of each listed expert.).

a.      **Dr. Glenn Zuck**:

        Mr. Daniyan does not object to the qualifications of Dr. Zuck, but Mr. Daniyan reserves the right to submit a separate motion in limine to address the scope of Dr. Zuck's trial testimony.  Mr. Daniyan objects to all testimony of Dr. Zuck other than his personal observations made during physical examination. Mr. Daniyan also objects to all testimony regarding Dr. Zuck's opinion on Mr. Daniyan's ability "to perform the job duties of a heavy porter" as Dr. Zuck was never employed by Defendant nor does he purport to be an expert on "heavy porters."

## PART VII.    <u>EXHIBITS</u>:

In this section of the Final Pretrial Order, counsel should number each proposed exhibit and upon receipt of the exhibit list of an adversary, opposing counsel should prepare a response to this exhibit list indicating as to each exhibit whether there will be an objection and if there is, the nature of the objection. Absent an extraordinary showing

of good cause, **ONLY THE EXHIBITS LISTED BELOW SHALL BE INTRODUCED AT THE TIME OF TRIAL.** You are not required to list exhibits that will be used, if at all, only for impeachment purposes.

Counsel are reminded that each such exhibit shall be physically pre-marked corresponding to the designation below. Copies of exhibit lists shall be provided to the District Judge and the assigned court reporter at the time of trial.

A.  Plaintiff's Exhibits

1.  Mr. Daniyan intends to introduce the following exhibits into evidence (list by numbers with a description of each exhibit);

| No: | Description: | Date: | Bates No: |
|---|---|---|---|
| PX_1 | Johan Daniyan Discipline – Termination | 6/20/2005 | JD0001 |
| PX_2 | Johan Daniyan Discipline – Medical Paperwork | 6/17/2005 | JD0003 |
| PX_3 | NovaCare Rehabilitation Patient Form | 6/24/2005 | JD0012 |
| PX_4 | Emergency Department Medical Clearance Form | 6/11/2005 | JD0006 |
| PX_5 | DirectCompRx Prescription Drug Program Form | 6/11/2005 | JD0007 |
| PX_6 | Johan Daniyan Prescriptions | 6/14/2005 | JD0013 |
| PX_7 | Johan Daniyan Prescription | 6/14/2005 | JD0014 |
| PX_8 | Workers' Compensation Report from Medical One | 6/11/2005 | JD0018 |
| PX_9 | Defendant Associate Injury/Illness Form | 6/11/2005 | JD0019-0021 |
| PX_10 | Defendant Supervisor's Report of Associate Injury/Illness | 6/11/2005 | JD0022 |
| PX_11 | Handwritten Notes (from the Medical Unit) | 6/17/2005 | JD0023 |
| PX_12 | Handwritten Notes (from the Medical Unit) | 6/20/2005 | JD0024 |
| PX_13 | NovaCare Rehabilitation Lumbar Evaluation Form | 6/17/2005 | JD0025-0026 |
| PX_14 | Atlantic City Medical Center Instructions | 6/11/2005 | JD0027-0030 |
| PX_15 | Defendant Medical Pass – Exhibit C | 6/14/2005 | JD0032 |
| PX_16 | Atlantic City Medical Center Emergency Medical Clearance Form | 6/11/2005 | JD0033 |
| PX_17 | 2005 W-2 Forms for Johan Daniyan | 2005 | JD0035-0036 |
| PX_18 | 2005 W-2 Forms for Johan Daniyan | 2005 | JD0039-0040 |
| PX_19 | Housekeeping Chronology of Events | 6/17/2005 | JD0041-0042 |
| PX_20 | HIPAA Request to Dr. Tiger | 5/15/2008 | JD0043 |
| PX_21 | Letter from Patricia Markey re: Dr. Tiger's Medical Records | 5/20/2008 | JD0044 |
| PX_22 | Dr. Tiger Evaluation | 1/8/2008 | JD0046-0047 |
| PX_23 | Social Security Records | 1/27/2009 | JD0088-0090 |
| PX_24 | Letter Extending Offer of Employment to Johan Daniyan | 4/5/2005 | Def. 1 |

| No: | Description: | Date: | Bates No: |
|---|---|---|---|
| PX_25 | Guest Room Attendant Job Description | 4/15/2005 | Def. 2 |
| PX_26 | Local 54 Collective Bargaining Compliance Form | 4/11/2005 | Def. 6 |
| PX_27 | Voluntary Self-Identification Form | 4/11/2005 | Def. 8 |
| PX_28 | Applicant Information Form | 4/18/2005 | Def. 9-10 |
| PX_29 | Defendant Personal Information Sheet | | Def. 13 |
| PX_30 | Johan Daniyan Employment History Form | | Def. 14-15 |
| PX_31 | Termination Document | 6/20/2005 | Def. 16 |
| PX_32 | Johan Daniyan Job Summary – General | | Def. 17 |
| PX_33 | Johan Daniyan Job Summary – Job Information | | Def. 18 |
| PX_34 | Johan Daniyan Job Summary – Work Location | | Def. 19 |
| PX_35 | Johan Daniyan Job Summary – Compensation | | Def. 20 |
| PX_36 | Johan Daniyan Discipline – Linen | 5/14/2005 | Def. 21-22 |
| PX_37 | Johan Daniyan Discipline – Work Performance | 5/21/2005 | Def. 23 |
| PX_38 | Johan Daniyan Discipline – Porter Key | 6/9/2005 | Def. 24-25 |
| PX_39 | Johan Daniyan Discipline – Medical Paperwork | 6/17/2005 | Def. 26 |
| PX_40 | Johan Daniyan Discipline – Termination Discipline | 6/20/2005 | Def. 27 |
| PX_41 | Email from Miroslawa Zaras to Kathleen Osborn re: Johan Daniyan | 6/23/2005 | Def. 28-29 |
| PX_42 | Incident File – Johan Daniyan | 6/11/2005 | Def. 30-34 |
| PX_43 | Email from Miroslawa Zaras to Kathleen Osborn re: Johan Daniyan | 6/24/2005 | Def. 35-36 |
| PX_44 | Defendant Medical Pass – Exhibit C | 5/29/2005 | Def. 37 |
| PX_45 | Memo from Santosh Kuruvilla re: Linen Chute | 5/15/2005 | Def. 38 |
| PX_46 | Defendant Medical Pass – Exhibit C | 5/7/2005 | Def. 39 |
| PX_47 | Defendant Medical Pass – Exhibit C | 5/8/2005 | Def. 40 |
| PX_48 | AM Daily Assignment Sheets | 5/8/2005 | Def. 41 |
| PX_49 | Assignment Sheet for Johan Daniyan | 5/8/2005 | Def. 42 |
| PX_50 | Applicant Information Form: Johan Daniyan | 3/19/2005 | Def. 45 |
| PX_51 | Applicant Data Form – Contact Info | | Def. 46 |
| PX_52 | Applicant Data Form – Applicant Application Info | | Def. 48-49 |
| PX_53 | Applicant Prior Work Experience Form 1 | | Def. 50-51 |
| PX_54 | Applicant Prior Work Experience Form 2 | | Def. 52-53 |
| PX_55 | Defendant Hotel Casino & Spa Associate Recorded Events | 7/4/2007 | Def. 54-55 |
| PX_56 | Johan Daniyan Discipline – Linen | 5/14/2005 | Def. 56-57 |
| PX_57 | Johan Daniyan Discipline – Work Performance | 5/21/2005 | Def. 58-59 |
| PX_58 | Johan Daniyan Discipline – Work Performance | 6/5/2005 | Def. 60-61 |
| PX_59 | Johan Daniyan Discipline – Porter Key | 6/9/2005 | Def. 62-63 |
| PX_60 | Johan Daniyan Discipline – Medical Paperwork | 6/17/2005 | Def. 64-65 |
| PX_61 | Year End Forms – Johan Daniyan | 2005 | Def. 204 |

| No: | Description: | Date: | Bates No: |
|---|---|---|---|
| PX_62 | Form W-4 (2005) for Johan Daniyan | 4/11/2005 | Def. 205 |
| PX_63 | Email from Susan Guld to Rocco Nicosia re: Johan Daniyan 5/8/05 Shoulder Injury | 6/20/2005 | Def. 227 |
| PX_64 | Email from Susan Guld to Alexandria York re: Johan Daniyan | 6/23/2005 | Def. 228-229 |
| PX_65 | Email from Alexandria York to Susan Guld re: Johan Daniyan | 6/30/2005 | Def. 230 |
| PX_66 | Letter from New Jersey Manufacturers Insurance Company to Marina District Development Co. re: Johan Daniyan | 10/19/2007 | Def. 239 |
| PX_67 | Letter from New Jersey Manufacturers Insurance Company to Marina District Development Co. re: Johan Daniyan | 7/19/2007 | Def. 240 |
| PX_68 | Letter from New Jersey Manufacturers Insurance Company to Marina District Development Co. re: Johan Daniyan | 3/22/2006 | Def. 241 |
| PX_69 | Johan Daniyan – Termination | 6/22/2005 | Def. 246 |
| PX_70 | Johan Daniyan – Termination | 6/20/2005 | Def. 247 |
| PX_71 | Johan Daniyan Discipline – Termination | 6/20/2005 | Def. 248 |
| PX_72 | Johan Daniyan Discipline – Medical Paperwork | 6/17/2005 | Def. 249 |
| PX_73 | Johan Daniyan Discipline – Porter Key | 6/9/2005 | Def. 250 |
| PX_74 | Johan Daniyan Discipline – Work Performance | 6/5/2005 | Def. 251 |
| PX_75 | Johan Daniyan Discipline – Work Performance | 5/21/2005 | Def. 252 |
| PX_76 | Johan Daniyan Discipline – Linen | 5/15/2005 | Def. 253 |
| PX_77 | Letter from Howard W. Crusy, Jr. to Johan Daniyan re: Claim Petition for Compensation | 9/16/2005 | Def. 276 |
| PX_78 | Health Insurance Claim Form | 8/26/2005 | Def. 277 |
| PX_79 | Atlantic City Medical Center File for Johan Daniyan | | Def. 278-281 |
| PX_80 | Pay Schedule A-1 | | Def. 214-215 |
| PX_81 | Pay Schedule A-2 | | Def. 216-217 |
| PX_82 | Emergency Medical Report | 6/11/2005 | Def. 289 |
| PX_83 | Physical Therapy Request for Johan Daniyan | 6/15/2005 | Def. 300 |
| PX_84 | Defendant Medical Pass – Exhibit C | 6/16/2005 | Def. 301 |
| PX_85 | Incident File – Johan Daniyan | 6/11/2005 | Def. 304-306 |
| PX_86 | Defendant Associate Injury/Illness Form – Exhibit A | 6/11/2005 | Def. 321-322 |
| PX_87 | Fax Coversheet from Medical One to Alex York re: Now Claims | 6/13/2005 | Def. 329 |
| PX_88 | Associate Statement Form – Ross Hamstra | 6/11/2005 | Def. 334 |
| PX_89 | Photographs (3) from security cameras | 6/11/2005 | Def. 335 |
| PX_90 | Workers' Compensation – Injury Report | 6/11/2005 | Def. 337 |

| No: | Description: | Date: | Bates No: |
|---|---|---|---|
| PX_91 | Workers' Compensation Cases | 2005 | Def. 816-817 |
| PX_92 | Guest Room Attendant Handbook | | Def. 2032-2119 |
| PX_93 | AM Daily Assignment Sheets | 5/8/2005 | Def. 2122 |
| PX_94 | Time Clock – Swipe In and Swipe Out Report – Johan Daniyan | 2005 | Def. 2126-2129 |
| PX_95 | Workers' Compensation Medical Pass and Modified Duty Policy | 9/16/2004 | Def. 2017-2029 |
| PX_96 | Defendant Report for Year 2005 Guest Room Attendants, Issued a Written Warning, Final Written Warning or Suspension | 2005 | Def. 1994-2016 |
| PX_97 | Policies and Procedures – Table of Contents from Guest Room Attendant Handbook | 4/21/2005 | Def. 2125 |
| PX_98 | Housekeeping Key Control Procedure / Coaching Event Report Form | 10/28/2003 | Def. 2140 |
| PX_99 | Atlantic City Medical Center Emergency Medical Clearance Form | 6/11/2005 | Def. 290 |
| PX_100 | Job Description for Housekeeping Heavy Porter | | Def. 2131 |
| PX_101 | Linen Chute Work Order | 5/14/2005 | Def. 2142-2143 |
| PX_102 | Employee Hire and Termination Log | 10/3/2008 | Def. 2132-2139 |
| PX_103 | Alexander Macchione Accident Record | 11/2/2007 | Def. 2155-2168 |
| PX_104 | Alexander Macchione Discipline Report | 2/13/2008 | Def. 2151 |
| PX_105 | Affidavit of Susan Hagerty-Guld | 7/3/2008 | Affirmation of J. Merson Ex. 41 |
| PX_106 | Dr. Tiger Letter re: 8/4/08 Examination | 8/4/2008 | Affirmation of J. Merson Ex. 60 |
| PX_107 | Curriculum Vitae of Arthur H. Tiger | | |
| PX_108 | Handwritten Notes | 6/15/2005 | Def. 302 |
| PX_109 | Coaching Report Form | 10/28/2003 | Def. 2141 |
| PX_110 | Physical Therapy Prescription | 6/14/2005 | Def. 310 |
| PX_111 | Additional Physical Therapy Prescription | 7/18/2005 | JD0015 |
| PX_112 | Physical Therapy Documents | 2005 | JD0091-0138 |

    2.    Defendant objects to the introduction of Mr. Daniyan's exhibit (set forth number of exhibit and grounds for objection).

| No: | Description: | Objection |
|---|---|---|
| PX_1 | Johan Daniyan Discipline – Termination | |
| PX_2 | Johan Daniyan Discipline – Medical Paperwork | |
| PX_3 | NovaCare Rehabilitation Patient Form | Hearsay |
| PX_4 | Emergency Department Medical Clearance Form | |

| No: | Description: | Objection |
|---|---|---|
| PX_5 | DirectCompRx Prescription Drug Program Form | Hearsay |
| PX_6 | Johan Daniyan Prescriptions | Hearsay |
| PX_7 | Johan Daniyan Prescription | Hearsay |
| PX_8 | Workers' Compensation Report from Medical One | Hearsay |
| PX_9 | Defendant Associate Injury/Illness Form | Portions of this document are hearsay. |
| PX_10 | Defendant Supervisor's Report of Associate Injury/Illness | |
| PX_11 | Handwritten Notes (from the Medical Unit) | Document will be considered hearsay without the author of the note. |
| PX_12 | Handwritten Notes (from the Medical Unit) | Document will be considered hearsay without the author of the note. |
| PX_13 | NovaCare Rehabilitation Lumbar Evaluation Form | Hearsay |
| PX_14 | Atlantic City Medical Center Instructions | Hearsay |
| PX_15 | Defendant Medical Pass – Exhibit C | |
| PX_16 | Atlantic City Medical Center Emergency Medical Clearance Form | |
| PX_17 | 2005 W-2 Forms for Johan Daniyan | |
| PX_18 | 2005 W-2 Forms for Johan Daniyan | Relevance |
| PX_19 | Housekeeping Chronology of Events | Document will be considered hearsay without the author of the note. |
| PX_20 | HIPAA Request to Dr. Tiger | Relevance |
| PX_21 | Letter from Patricia Markey re: Dr. Tiger's Medical Records | Hearsay |
| PX_22 | Dr. Tiger Evaluation | Hearsay |
| PX_23 | Social Security Records | Portions of the document should be redacted for relevance, including the name of plaintiff's mother. |
| PX_24 | Letter Extending Offer of Employment to Johan Daniyan | |
| PX_25 | Guest Room Attendant Job Description | |
| PX_26 | Local 54 Collective Bargaining Compliance Form | |
| PX_27 | Voluntary Self-Identification Form | |
| PX_28 | Applicant Information Form | |
| PX_29 | Defendant Personal Information Sheet | Relevance |
| PX_30 | Johan Daniyan Employment History Form | |
| PX_31 | Termination Document | |
| PX_32 | Johan Daniyan Job Summary – General | |
| PX_33 | Johan Daniyan Job Summary – Job Information | |
| PX_34 | Johan Daniyan Job Summary – Work Location | |
| PX_35 | Johan Daniyan Job Summary – Compensation | |
| PX_36 | Johan Daniyan Discipline – Linen | |

| No: | Description: | Objection |
|---|---|---|
| PX_37 | Johan Daniyan Discipline – Work Performance | |
| PX_38 | Johan Daniyan Discipline – Porter Key | |
| PX_39 | Johan Daniyan Discipline – Medical Paperwork | |
| PX_40 | Johan Daniyan Discipline – Termination Discipline | |
| PX_41 | Email from Miroslawa Zaras to Kathleen Osborn re: Johan Daniyan | |
| PX_42 | Incident File – Johan Daniyan | |
| PX_43 | Email from Miroslawa Zaras to Kathleen Osborn re: Johan Daniyan | |
| PX_44 | Defendant Medical Pass – Exhibit C | Relevance |
| PX_45 | Memo from Santosh Kuruvilla re: Linen Chute | |
| PX_46 | Defendant Medical Pass – Exhibit C | Relevance |
| PX_47 | Defendant Medical Pass – Exhibit C | Relevance |
| PX_48 | AM Daily Assignment Sheets | |
| PX_49 | Assignment Sheet for Johan Daniyan | |
| PX_50 | Applicant Information Form: Johan Daniyan | Relevance |
| PX_51 | Applicant Data Form – Contact Info | |
| PX_52 | Applicant Data Form – Applicant Application Info | |
| PX_53 | Applicant Prior Work Experience Form 1 | |
| PX_54 | Applicant Prior Work Experience Form 2 | |
| PX_55 | Defendant Hotel Casino & Spa Associate Recorded Events | Duplicate of another exhibit.  This version does not have the signature of the associate or supervisor and therefore is not the best evidence. |
| PX_56 | Johan Daniyan Discipline – Linen | Same as above. |
| PX_57 | Johan Daniyan Discipline – Work Performance | Same as above. |
| PX_58 | Johan Daniyan Discipline – Work Performance | Same as above. |
| PX_59 | Johan Daniyan Discipline – Porter Key | Same as above. |
| PX_60 | Johan Daniyan Discipline – Medical Paperwork | Same as above. |
| PX_61 | Year End Forms – Johan Daniyan | Relevance |
| PX_62 | Form W-4 (2005) for Johan Daniyan | Relevance |
| PX_63 | Email from Susan Guld to Rocco Nicosia re: Johan Daniyan 5/8/05 Shoulder Injury | Relevance |
| PX_64 | Email from Susan Guld to Alexandria York re: Johan Daniyan | Relevance and hearsay |
| PX_65 | Email from Alexandria York to Susan Guld re: Johan Daniyan | Relevance |
| PX_66 | Letter from New Jersey Manufacturers Insurance Company to Marina District Development Co. re: Johan Daniyan | Relevance |

| No: | Description: | Objection |
|---|---|---|
| PX_67 | Letter from New Jersey Manufacturers Insurance Company to Marina District Development Co. re: Johan Daniyan | Relevance |
| PX_68 | Letter from New Jersey Manufacturers Insurance Company to Marina District Development Co. re: Johan Daniyan | Relevance |
| PX_69 | Johan Daniyan – Termination | |
| PX_70 | Johan Daniyan – Termination | |
| PX_71 | Johan Daniyan Discipline – Termination | |
| PX_72 | Johan Daniyan Discipline – Medical Paperwork | |
| PX_73 | Johan Daniyan Discipline – Porter Key | |
| PX_74 | Johan Daniyan Discipline – Work Performance | |
| PX_75 | Johan Daniyan Discipline – Work Performance | |
| PX_76 | Johan Daniyan Discipline – Linen | |
| PX_77 | Letter from Howard W. Crusy, Jr. to Johan Daniyan re: Claim Petition for Compensation | Relevance and hearsay |
| PX_78 | Health Insurance Claim Form | Relevance and hearsay |
| PX_79 | Atlantic City Medical Center File for Johan Daniyan | Hearsay |
| PX_80 | Pay Schedule A-1 | |
| PX_81 | Pay Schedule A-2 | |
| PX_82 | Emergency Medical Report | Hearsay |
| PX_83 | Physical Therapy Request for Johan Daniyan | |
| PX_84 | Defendant Medical Pass – Exhibit C | |
| PX_85 | Incident File – Johan Daniyan | Duplicate of prior exhibit |
| PX_86 | Defendant Associate Injury/Illness Form – Exhibit A | Duplicate of prior exhibit |
| PX_87 | Fax Coversheet from Medical One to Alex York re: Now Claims | Relevance |
| PX_88 | Associate Statement Form – Ross Hamstra | Relevance |
| PX_89 | Photographs (3) from security cameras | |
| PX_90 | Workers' Compensation – Injury Report | Relevance |
| PX_91 | Workers' Compensation Cases | |
| PX_92 | Guest Room Attendant Handbook | |
| PX_93 | AM Daily Assignment Sheets | |
| PX_94 | Time Clock – Swipe In and Swipe Out Report – Johan Daniyan | Relevance |
| PX_95 | Workers' Compensation Medical Pass and Modified Duty Policy | |
| PX_96 | Defendant Report for Year 2005 Guest Room Attendants, Issued a Written Warning, Final Written Warning or Suspension | |

| No: | Description: | Objection |
|---|---|---|
| PX_97 | Policies and Procedures – Table of Contents from Guest Room Attendant Handbook | |
| PX_98 | Housekeeping Key Control Procedure / Coaching Event Report Form | Relevance |
| PX_99 | Atlantic City Medical Center Emergency Medical Clearance Form | Duplicate of prior exhibit |
| PX_100 | Job Description for Housekeeping Heavy Porter | |
| PX_101 | Linen Chute Work Order | |
| PX_102 | Employee Hire and Termination Log | Object to the form of this document. A landscape version of the document will be provided. |
| PX_103 | Alexander Macchione Accident Record | Relevance |
| PX_104 | Alexander Macchione Discipline Report | Relevance |
| PX_105 | Affidavit of Susan Hagerty-Guld | A separate motion will be filed to address the use of this affidavit. |
| PX_106 | Dr. Tiger Letter re: 8/4/08 Examination | Hearsay |
| PX_107 | Curriculum Vitae of Arthur H. Tiger | Hearsay |
| PX_108 | Handwritten Notes | Hearsay, relevance |
| PX_109 | Coaching Report Form | Relevance |
| PX 111 | Additional Physical Therapy Prescription | Relevance |
| PX_112 | Physical Therapy Documents | ~~Documents were not provided during discovery~~ |

*Objection overruled. [signature] 1/11/10 See Dkt. No. 82.*

B.   Defendant's Exhibits

    1.   Defendant intends to introduce the following exhibits into evidence (list by number with a description of each exhibit);

| No. | Description | Date | Bates No |
|---|---|---|---|
| D-1 | Plaintiff's Offer letter | 4/5/2005 | 1 |
| D-2 | Guest Room Attendant Job Description | 4/5/2005 | 2 |
| D-3 | Employment Inquiry Release | 4/11/2005 | 11 |
| D-4 | Plaintiff's Employment Application | 4/5/2005 | 14-15 |
| D-5 | Electronic Employment Status | 6/22/2005 | 16 |
| D-6 | Plaintiff's Discipline – Verbal Coaching | 5/15/2005 | 21-22 |
| D-7 | Plaintiff's Discipline – Written Warning | 5/21/2006 | 23 |
| D-8 | Plaintiff's Discipline – Final Written Warning | 6/9/2005 | 24-25 |
| D-9 | Plaintiff's Discipline – Suspension | 6/17/2005 | 26 |
| D-10 | Plaintiff's Discipline – Termination | 6/20/2006 | 27 |
| D-11 | E-mails from Mira Zaras and Susan Guld | 6/23/2005 | 28 |
| D-12 | E-mail from Mira Zaras | 6/12/2005 | 29 |
| D-13 | Incident Report | 6/11/2005 | 30-34D & 334 |

| D-14 | E-mails from Mira Zaras | 6/24/2009 | 35 |
|---|---|---|---|
| D-15 | Plaintiff's Borgata Medical Pass | 5/7/2005 | 39 |
| D-16 | Plaintiff's Borgata Medical Pass | 5/8/2005 | 40 |
| D-17 | Policies and Procedures Review Acknowledgement | 4/21/2005 | 43 |
| D-18 | Policy and Procedures Review Acknowledgment | 4/21/2005 | 44 |
| D-19 | Applicant Information Interview Sheet | 3/19/2005 | 45 |
| D-20 | Applicant Data Sheet | 3/14/2005 | 46-47 |
| D-21 | Electronic Application | 3/14/2005 | 48-53 |
| D-22 | Associate Recorded Events | 7/4/2007 | 54-55 |
| D-23 | Borgata Equal Employment Policy | 7/3/2003 | 96-100 |
| D-24 | Borgata Hiring Process | 7/3/2003 | 101-103 |
| D-25 | Borgata Introductory Period | 7/3/2003 | 104-105 |
| D-26 | Borgata Talent Relations Policy | 7/3/2003 | 106-107 |
| D-27 | Borgata Associate Assistance Program | 7/3/2003 | 109-111 |
| D-28 | Borgata Employment Applications Policy | 7/3/2003 | 112 |
| D-29 | Borgata Conduct and Work Rules Policy | 7/3/2003 | 113-125 |
| D-30 | Borgata Investigations Policy | 7/3/2003 | 126-134 |
| D-31 | Borgata Coaching and Progressive Discipline Policy | 7/3/2003 | 135-143 |
| D-32 | Memo re: Equal Opportunity | 4/18/2005 | 149 |
| D-33 | Plaintiff's Borgata W-2 Status | 2005 | 204 |
| D-34 | Collective Bargaining Agreement Local 54 | 12/23/2003 | 207-217 |
| D-35 | Borgata Drug and Alcohol Use and Testing Policy | 7/3/2003 | 218-226 |
| D-36 | E-mails to and from Susan Guld | 7/23/2005 | 228-229 |
| D-37 | Disciplinary Action Electronic Print Screen | 6/20/2205 | 246-248 |
| D-38 | Disciplinary Action Electronic Print Screen | 6/17/2005 | 249 |
| D-39 | Disciplinary Action Electronic Print Screen | 6/9/2005 | 250 |
| D-40 | Disciplinary Action Electronic Print Screen | 6/5/2005 | 251 |
| D-41 | Disciplinary Action Electronic Print Screen | 5/21/2005 | 252 |
| D-42 | Disciplinary Action Electronic Print Screen | 5/15/2005 | 253 |
| D-43 | Borgata Drug Screening Consent Form | 4/5/2005 | 261 |
| D-44 | E-mails from Susan Guld and Mira Zaras | 6/14/2005 | 271 |
| D-45 | Handwritten Notes re: Plaintiff's failure to submit documentation and return to full duty status | 6/11/2005 | 272 |
| D-46 | Radiology Report – Lumbar spine | 6/14/2005 | 287 |
| D-47 | Radiology Report – CT Lumbar | 6/14/2005 | 288 |
| D-48 | Atlantic City Medical Center Medical Clearance | 6/11/2005 | 290 |
| D-49 | PACE Patient Instruction Form | 6/14/2005 | 291 |
| D-50 | Memo from Susan Guld regarding suspension pending receipt of medical | 6/17/2005 | 293 |

| | paperwork | | |
|---|---|---|---|
| D-51 | Medical Unit Notes | 6/17/2006 | 294 |
| D-52 | Chronology of Events | 6/17/2005 | 295-296 |
| D-53 | Physical Therapy Request – leave work early to attend | 6/17/2005 | 297 |
| D-54 | Medical Unit Notes | 6/17/2005 | 298-299 |
| D-55 | Physical Therapy Request | 6/15/2005 | 300 |
| D-56 | Borgata Medical Pass | 6/16/2005 | 301 |
| D-57 | Medical Unit Notes | 6/15/2005 | 302-303 |
| D-58 | Letter from Dr. Glenn Zuck of PACE Orthopedics | 6/14/2005 | 307-308 |
| D-59 | Drug Prescriptions | 6/14/2005 | 312-313 |
| D-60 | Borgata Medical Pass | 6/14/2005 | 314 |
| D-61 | Authorization to Brigantine Taxi Service | 6/14/2005 | 315 |
| D-62 | Medical Unit Notes | 6/13/2005 | 316-318 |
| D-63 | Borgata Consent for Drug Testing | 6/13/2005 | 320 |
| D-64 | Borgata Associate Illness Form | 6/13/2005 | 321-322 |
| D-65 | Medical One Worker's Compensation Report | 6/11/2005 | 323 |
| D-66 | Borgata Supervisor's Report of Associate Illness/Injury | 6/11/2005 | 327 |
| D-67 | Worker's Compensation First Report of Injury or Illness | 6/15/2005 | 337 |
| D-68 | Drug Test Log | 5/23/2005 | 361-376 |
| D-69 | Discipline/Termination – Janet Schroeder | 11/7/2005 | 598-599 |
| D-70 | Discipline/Termination – Stacy Brunetti | 9/22/2005 | 600-601 |
| D-71 | Discipline/Termination – Felicia C. Croker | 12/8/2005 | 602-603 |
| D-72 | Discipline/Termination – Mychael Branch | 12/8/2005 | 606-607 |
| D-73 | Discipline/Termination – Yana Yordanova | 8/29/2005 | 608-609 |
| D-74 | Discipline/Termination – Bambi L. Blount | 11/1/2005 | 612-613 |
| D-75 | Discipline/Termination – Florinda Palaez de Munoz | 10/7/2005 | 614-615 |
| D-76 | Discipline/Termination – Eli Stoyanova | 8/11/2005 | 620-621 |
| D-77 | Discipline/Termination – Yovani I. Nozario | 7/10/2005 | 632-633 |
| D-78 | Discipline/Termination – Jerusalem Tewoldeberhan | 9/3/2005 | 634-635 |
| D-79 | Discipline/Termination – Carol I. Smith | 12/10/2005 | 636-637 |
| D-80 | Discipline/Termination – Tauheed M. Shamsiddeen | 4/24/2005 | 668-669 |
| D-81 | Discipline/Termination – Holly A. Smith | 12/15/2005 | 670-671 |
| D-82 | Discipline/Termination – Mia A. Jones | 1/3/2005 | 698-699 |
| D-83 | Discipline/Termination – Esperenza Mejia | 3/21/2005 | 720-721 |
| D-84 | Discipline/Termination – Khalif S. Davis | 4/3/2005 | 727-728 |
| D-85 | Discipline/Termination – Socorro Perez | 9/1/2005 | 732-733 |

| D-86 | Discipline/Termination – Tatiana Bazhenova | 8/17/2005 | 738-739 |
| D-87 | Discipline/Termination – Agustin F. Nunez | 11/13/2005 | 742-743 |
| D-88 | Discipline/Termination – Iman C. White | 12/25/2005 | 746-747 |
| D-89 | Discipline/Termination – Jaime S. Reid | 1/3/2005 | 756-757 |
| D-90 | Discipline/Termination – Maria D. Gomez | 5/21/2005 | 758-759 |
| D-91 | Discipline/Termination – Sylvia E. Gonazalez | 10/23/2005 | 762-763 |
| D-92 | Discipline/Termination – Kumud Amin | 4/28/2005 | 768-769 |
| D-93 | Discipline/Termination – Melvin C. Timberlake, Jr. | 4/6/2005 | 782-783 |
| D-94 | Discipline/Termination – Elena Tarasova | 9/7/2005 | 790-791 |
| D-95 | Discipline/Termination – Johan E. Daniyan | 6/20/2005 | 792-793 |
| D-96 | 2005 Report of GRA's Issued Discipline | | 1994-2016 |
| D-97 | Borgata Worker's Compensation Medical Pass and Modified Duty Policy | 7/3/2003 | 2017-2029 |
| D-98 | Borgata Employment Applications Policy | 7/3/2003 | 2030 |
| D-99 | Plaintiff's Acknowledgement of Housekeeping Policies and Procedures Review | 4/21/2005 | 2031 |
| D-100 | Job Description for Housekeeping Heavy Porter | 5/27/2003 | 2131 |
| D-101 | Housekeeping Key Control Procedure | 7/2003 | 2140 |
| D-102 | Plaintiff's Tropicana Personnel File | 5/19/08 | |

2.   Mr. Daniyan objects to the introduction of Defendant's exhibit (set forth number of exhibit and grounds for objection).

Mr. Daniyan reserves the right to object, on any ground, to any exhibit Defendants seek to introduce at trial, whether or not objected to herein, to the extent Defendants seek to use the exhibit for an inadmissible purpose or to introduce it in an improper manner.

| Defendant's Exhibit No: | Description | Objection(s) |
|---|---|---|
| D-3 | Employment Inquiry Release | Relevance (FRE 401/402); Cumulative, Confusion, Waste of Time (FRE 403) |
| D-4 | Plaintiff's Employment Application | Relevance (FRE 401/402); Hearsay (FRE 801,802) |
| D-11 | E-mails from Mira Zaras and Susan Guld | Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-12 | E-mail from Mira Zaras | Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-13 | Incident Report | Relevance (FRE 401/402); Authentication (FRE 901); ~~Documents were not produced during discovery;~~ Incomplete Document *Objection withdrawn. P. 1/11/10* |
| D-14 | E-mails from Mira | Hearsay (FRE 801,802); Authentication (FRE 901) |

| | Zaras | |
|---|---|---|
| D-17 | Policies and Procedures Review Acknowledgement | Relevance (FRE 401/402); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-18 | Policy and Procedures Review Acknowledgment | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-19 | Applicant Information Interview Sheet | Relevance (FRE 401/402); Hearsay (FRE 801,802) |
| D-20 | Applicant Data Sheet | Relevance (FRE 401/402);  Hearsay (FRE 801,802) |
| D-21 | Electronic Application | Relevance (FRE 401/402) |
| D-22 | Associate Recorded Events | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403) |
| D-23 | Borgata Equal Employment Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-24 | Borgata Hiring Process | Relevance (FRE 401/402); Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-25 | Borgata Introductory Period | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-26 | Borgata Talent Relations Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403 |
| D-27 | Borgata Associate Assistance Program | Relevance (FRE 401/402);  Hearsay (FRE 801,802) |
| D-28 | Borgata Employment Applications Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-29 | Borgata Conduct and Work Rules Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-30 | Borgata Investigations Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-31 | Borgata Coaching and Progressive Discipline Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-32 | Memo re: Equal Opportunity | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403) |
| D-34 | Collective Bargaining Agreement Local 54 | Relevance (FRE 401/402); Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-35 | Borgata Drug and Alcohol Use and Testing Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-36 | E-mails to and from | Hearsay (FRE 801,802); Authentication (FRE 901) |

|  | Susan Guld |  |
|---|---|---|
| D-37 | Disciplinary Action Electronic Print Screen | Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-38 | Disciplinary Action Electronic Print Screen | Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-39 | Disciplinary Action Electronic Print Screen | Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-40 | Disciplinary Action Electronic Print Screen | Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-41 | Disciplinary Action Electronic Print Screen | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-42 | Disciplinary Action Electronic Print Screen | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-43 | Borgata Drug Screening Consent Form | Relevance (FRE 401/402); Cumulative, Confusion, Waste of Time (FRE 403) |
| D-44 | E-mails from Susan Guld and Mira Zaras | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-45 | Handwritten Notes re: Plaintiff's failure to submit documentation and return to full duty status | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-46 | Radiology Report – Lumbar spine | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-47 | Radiology Report – CT Lumbar | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-48 | Atlantic City Medical Center Medical Clearance | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-49 | PACE Patient Instruction Form | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-50 | Memo from Susan Guld regarding suspension pending receipt of medical | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |

| | paperwork | |
|---|---|---|
| D-51 | Medical Unit Notes | Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-52 | Chronology of Events | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-53 | Physical Therapy Request – leave work early to attend | Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-54 | Medical Unit Notes | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-55 | Physical Therapy Request | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-56 | Borgata Medical Pass | Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-57 | Medical Unit Notes | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-58 | Letter from Dr. Glenn Zuck of PACE Orthopedics | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-60 | Borgata Medical Pass | Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-61 | Authorization to Brigantine Taxi Service | Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-62 | Medical Unit Notes | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-63 | Borgata Consent for Drug Testing | Relevance (FRE 401/402); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-66 | Borgata Supervisor's report of Associate Illness/Injury | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-67 | Worker's Compensation First Report of Injury or Illness | Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-68 | Drug Test Log | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-69 | Discipline/Termination – Janet Schroeder | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-70 | Discipline/Termination | Relevance (FRE 401/402); Hearsay (FRE 801,802); |

54

| | | |
|---|---|---|
| | – Stacy Brunetti | Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-71 | Discipline/Termination – Felicia C. Croker | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-72 | Discipline/Termination – Mychael Branch | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-73 | Discipline/Termination – Yana Yordanova | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-74 | Discipline/Termination – Bambi L. Blount | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-75 | Discipline/Termination – Florinda Palaez de Munoz | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-76 | Discipline/Termination – Eli Stoyanova | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-77 | Discipline/Termination – Yovani I. Nozario | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-78 | Discipline/Termination – Jerusalem Tewoldeberhan | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-79 | Discipline/Termination – Carol I. Smith | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-80 | Discipline/Termination – Tauheed M. Shamsiddeen | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-81 | Discipline/Termination – Holly A. Smith | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-82 | Discipline/Termination – Mia A. Jones | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-83 | Discipline/Termination – Esperenza Mejia | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-84 | Discipline/Termination – Khalif S. Davis | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-85 | Discipline/Termination – Socorro Perez | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); |

| | | Authentication (FRE 901) |
|---|---|---|
| D-86 | Discipline/Termination – Tatiana Bazhenova | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-87 | Discipline/Termination – Agustin F. Nunez | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-88 | Discipline/Termination – Iman C. White | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-89 | Discipline/Termination – Jaime S. Reid | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-90 | Discipline/Termination – Maria D. Gomez | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-91 | Discipline/Termination – Sylvia E. Gonazalez | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-92 | Discipline/Termination – Kumud Amin | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-93 | Discipline/Termination – Melvin C. Timberlake, Jr. | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-94 | Discipline/Termination – Elena Tarasova | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |
| D-96 | 2005 Report of GRA's Issued Discipline | Relevance (FRE 401/402); Hearsay (FRE 801,802); Authentication (FRE 901) |
| D-97 | Borgata Worker's Compensation Medical Pass and Modified Duty Policy | Relevance (FRE 401/402); Authentication (FRE 901) |
| D-98 | Borgata Employment Applications Policy | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) – Duplicate of D-28 |
| D-99 | Plaintiff's Acknowledgement of Housekeeping Policies and Procedures Review | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) – Duplicate of D-17 |
| D-101 | Housekeeping Key Control Procedure | Relevance (FRE 401/402); Authentication (FRE 901) |
| D-102 | Plaintiff's Tropicana Personnel File | Relevance (FRE 401/402); Hearsay (FRE 801,802); Cumulative, Confusion, Waste of Time (FRE 403); Authentication (FRE 901) |

**PART VIII.  LAW:**

A.  Plaintiff

    1.    Whether Defendant unlawfully discriminated against Mr. Daniyan in violation of the ADA by denying him equal terms and conditions of employment, including but not limited to, giving him written warnings and terminating his employment because of his disability, being regarded as disabled and/or because of Mr. Daniyan's record of disability.

    2.    Whether Defendant unlawfully violated its duty under the ADA to provide Mr. Daniyan with a reasonable accommodation for his disability when it denied Mr. Daniyan's request for light duty, failed and refused to engage in discussion with Mr. Daniyan regarding his need for an accommodation, and/or failed and refused to engage in discussion with Mr. Daniyan regarding the potential provision of alternative accommodations after denying Mr. Daniyan's request for light duty accommodations.

    3.    Whether Defendant's conduct (e.g., issuing baseless performance and unwarranted performance warnings, threatening further discipline and terminating Mr. Daniyan's employment) constitutes unlawful retaliation in violation of the ADA.

    4.    Whether Defendant is liable for the monetary and/or economic damages Mr. Daniyan has suffered and continues to suffer, including but not limited to loss of past and future income, compensation and other benefits as a direct and proximate result of Defendant's violation of the ADA.

    5.    Whether Defendant is liable for the severe mental anguish and emotional distress Mr. Daniyan has suffered and continues to suffer, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity and emotional pain and suffering as a direct and proximate result of Defendant's violation of the ADA.

    6.    Whether Defendant's unlawful and discriminatory actions constitute malicious willful and wanton violations of the ADA for which Mr. Daniyan is entitled to an award of punitive damages.

    7.    Whether Defendant unlawfully discriminated against Mr. Daniyan in violation of NJLAD by denying him equal terms and conditions of employment, including but not limited to, giving him written warnings and terminating his employment because of his disability, being regarded as disabled and/or because of Mr. Daniyan's record of disability.

8.     Whether Defendant unlawfully violated its duty under the NJLAD to provide Mr. Daniyan with a reasonable accommodation for his disability when it denied Mr. Daniyan's request for light duty, failed and refused to engage in discussion with Mr. Daniyan regarding his need for an accommodation, and/or failed and refused to engage in discussion with Mr. Daniyan regarding the potential provision of alternative accommodations after denying Mr. Daniyan's request for light duty accommodations.

9.     Whether Defendant's conduct (e.g., issuing baseless performance and unwarranted performance warnings, threatening further discipline and terminating Mr. Daniyan's employment) constitutes unlawful retaliation in violation of the NJLAD.

10.     Whether Defendant is liable for the monetary and/or economic damages Mr. Daniyan has suffered and continues to suffer, including but not limited to loss of past and future income, compensation and other benefits as a direct and proximate result of Defendant's violation of the NJLAD.

11.     Whether Defendant is liable for the severe mental anguish and emotional distress Mr. Daniyan has suffered and continues to suffer, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity and emotional pain and suffering as a direct and proximate result of Defendant's violation of the NJLAD.

12.     Whether Defendant's unlawful and discriminatory actions constitute malicious willful and wanton violations of the NJLAD for which Mr. Daniyan is entitled to an award of punitive damages.

13.     Whether Defendant unlawfully retaliated against Mr. Daniyan for requesting compensation under the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-1, *et seq.*, for physical therapy treatments as well as time away from work in order to attend physical therapy treatments by, *inter alia*, terminating his employment.

14.     Whether Defendant is liable for the monetary and/or economic damages Mr. Daniyan has suffered and continues to suffer, including but not limited to loss of past and future income, compensation and other benefits as a direct and proximate result of Defendant's unlawful termination of Mr. Daniyan's employment in violation of the Workers' Compensation Law.

15.     Whether Defendant is liable for the severe mental anguish and emotional distress Mr. Daniyan has suffered and continues to suffer, including but not limited to depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem, self-confidence and personal dignity and emotional pain and suffering as a direct and proximate result of Defendant's unlawful termination of Mr. Daniyan's employment in violation of the Workers' Compensation Law.

16.     Whether Defendant's unlawful and discriminatory actions constitute malicious willful and wanton violations of the New Jersey Workers' Compensation Law, N.J.S.A. 34:15-1, *et seq.*, for which Mr. Daniyan is entitled to an award of punitive damages.

17.     Whether for all of the aforementioned violations of law, Defendant is liable for attorneys' fees and costs in an amount to be determined at trial.

18.     Whether for all of the aforementioned violations of law, Defendant is liable for the aforementioned damages, plus prejudgment interest.

**Motions in Limine**
Mr. Daniyan intends to file motions in limine within the time period set by the Court.

B.     Defendant

1.     Defendant's statement of the legal issues in this case.

a.  Whether plaintiff was a qualified individual with a disability as of June 20, 2005.

.

b.  Whether plaintiff has set forth sufficient evidence that his disability was a determinative factor in his termination.

c.  Whether plaintiff has set forth sufficient evidence that defendant retaliated against plaintiff on the basis of his disability.

d.  Whether plaintiff has introduced sufficient evidence that the legitimate nondiscriminatory reason for plaintiff's termination, his poor performance, is discredited.

e.  Whether plaintiff has introduced sufficient evidence that he was retaliated against for seeking worker's compensation benefits.

f.  Whether plaintiff requested light duty.

g.  Whether plaintiff has introduced sufficient evidence that he was wrongfully denied light duty, in violation of the NJ Worker's Compensation Act, New Jersey Law Against Discrimination, or American's With Disabilities Act.

59

h.  Whether plaintiff has mitigated his damages.

i.    Whether plaintiff's sworn statement to the Social Security Administration and the determination of the Social Security Administration that plaintiff was totally disabled as of December, 2007 renders him ineligible for a claim of lost wages.

j.  Whether plaintiff withdrew from the job market.

**Motions in Limine**
Defendant intends to file motions in limine within the time period set by the Court.

## PART IX.    <u>MISCELLANEOUS:</u>

Set forth any additional stipulations of counsel and/or motions on other matters which require action of the court.

Set forth any notice required to be given under Rules 404(b), 609(b), 803(24) and 804(b)(5), Federal Rules of Evidence.

<u>Plaintiff</u>: None
<u>Defendant</u>:

## PART X.    <u>JURY TRIALS (If Applicable)</u>

No later than seven days prior to the scheduled trial date or at such time as the court may direct:

1.    Each party shall submit to the District Judge and to opposing counsel a trial brief or memorandum with citations and authorities and arguments in support of the party's position on all issues of law.

2.    Each party shall submit to the District Judge and to opposing counsel <u>written requests for charges to the jury</u>. Supplemental requests to charge that could not have been anticipated may be submitted any time prior to the arguments to the jury. All requests for charge shall be on a separate page or pages plainly marked with the name and number of the case; shall contain citations of supporting authorities; shall designate the party submitting the same; and shall be numbered in sequence.

<u>IF</u> you have the capability, the Proposed Requests for Charge should be submitted on computer disk, Word Perfect format. A paper original for filing, as well as a paper copy, must be provided in any event.

3.    Each party shall submit to the judge and to opposing counsel <u>proposed voir dire questions.</u>

EACH OF THESE ITEMS IS TO BE FILED PRIOR TO THE FIRST TRIAL DATE EVEN IF THE CASE IS CONTINUED.

COUNSEL ARE ON NOTICE THAT FAILURE TO PROVIDE TIMELY COMPLIANCE WITH THE REQUESTS OF PART X MAY RESULT IN THE POSTPONEMENT OF TRIAL AND THE ASSESSMENT OF JUROR AND OTHER COSTS AND/OR THE IMPOSITION OF SANCTIONS.

## CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signature to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the court. Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the court determines that manifest injustice would result if the amendment is not allowed.

Attorneys for Plaintiff:                    Attorneys for Defendant:

_____                    _____
Kenneth P. Thompson, Esq.                   Eileen O. Muskett, Esq.

_____                    _____
Andrew S. Goodstadt, Esq.                   Russell L. Lichtenstein, Esq.

_____
Gregg H. Salka, Esq.


Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this _____ day of JANUARY, 2009. 2010

_____
JOEL SCHNEIDER
UNITED STATES MAGISTRATE JUDGE
United States District Court
For the District of New Jersey

59



**ARTHUR H. TIGER, M.D., P.A.**
TOWNSQUARE ORTHOPEDICS
FELLOW – AMERICAN ACADEMY OF ORTHOPEDIC SURGEONS
DIPLOMATE – AMERICAN BOARD OF ORTHOPEDIC SURGERY

## CURRICULUM VITAE

**PERSONAL:**

| | |
|---|---|
| DATE OF BIRTH: | July 25, 1939 |
| CITIZENSHIP: | U.S.A. |
| MARITAL STATUS: | Married |

**PROFESSIONAL PRACTICE EXPERIENCE:**

March 1997 – present

Solo Practice
Townsquare Orthopedics
    600 Mt. Pleasant Avenue
    Dover, New Jersey 07801
As of 2002, Limited to Orthopedic Treatment

1984 – 1997

Townsquare Orthopedics Associates, P.A.
    600 Mt. Pleasant Avenue
    Dover, New Jersey 07801
Private Group Practice
Limited to Orthopedic Surgery

1970 – April 1989

Roxbury Medical Group
    77 Sunset Strip
    Succasunna, New Jersey 07876
Multi-specialty Group Practice
Limited to Orthopedic Surgery

1970 – 1984

Medical Associates
    77 Union Street
    Dover, New Jersey 07801
Multi-specialty Group Practice
Limited to Orthopedic Surgery

**MEDICAL STAFF MEMBERSHIP:**

St. CLARE'S HEALTH CENTER
Dover, New Jersey 07801

St. CLARE'S HEALTH CENTER
Denville, New Jersey 07834

    Appointments and Positions:
    Courtesy Staff 2007
    Attending Staff 1970 – 2007
    President of the Medical Staff 1985 – 1986
    Chief of Orthopedic Surgery 1972 – 1990

Please reply to:    600 Mt. Pleasant Avenue, Suite E • Dover, NJ 07801-1638 • 973/989-8600 • Fax 973/989-1095
www.arthurtiger.com
*Remember 9/11/01*

CURRICULUM VITAE          ARTHUR H. TIGER                    PAGE 2

## EDUCATION:

| | |
|---|---|
| SECONDARY EDUCATION: 1952 – 1956 | Bronx High School of Science |
| COLLEGE EDUCATION: 1956 – 1960 | New York University College of Arts and Science, Phi Beta Kappa Cum Laude |
| MEDICAL EDUCATION: 1960 – 1964 | New York University School of Medicine |
| INTERNSHIP: 1964 – 1965 | General Surgery New York University Division of Bellevue Hospital |
| RESIDENCY: 1965 - 1966 | General Surgery New York University Division of Bellevue Hospital |
| 1966 – 1969 | Orthopedic Surgery Hospital for Joint Diseases Orthopedic Institute |
| FELLOWSHIP: 1969 - 1970 | Pediatric Orthopedics Boston Children's Hospital Boston, Massachusetts |

## PROFESSIONAL ASSOCIATIONS:

*American Board of Orthopedic Surgery* – Board Certified 1972

*American Academy of Orthopedic Surgeons* – Fellow 1975

*Fellow in the Academy of Medicine of New Jersey* - 1984

*Morris County Medical Society*
      Chairman, Peer Review Committee – June 1980 to June 1982

## MEMBERSHIP OTHER ORGANIZATIONS:

*Member Board of Trustees,* Dover General Hospital 1985-1986

C.V. updated 3/20/09

CURRICULUM VITAE

# GLENN M. ZUCK, D.O.

Office
547 New Road
Somers Point, NJ 08244
609-927-9200

Residence
1255 Franklin Blvd
Linwood, NJ 08221
609-653-0582

609-927-1616 Fax
Birthdate: 5-31-59
Birthplace: Longbranch, NJ

## BOARD CERTIFICATION

Board Certified Orthopedic Surgery -- September 1994 American Osteopathic Board of Orthopedic Surgery

## EDUCATION

1973 – 1977 Lakewood High School, Lakewood, New Jersey

1977 – 1981 Emory University, Atlanta, Georgia

1981 – 1982 University of Health Sciences College of Osteopathic Medicine, Kansas City, Missouri

1982 – 1985 University of Medicine and Dentistry of New Jersey School of Osteopathic Medicine, Stratford, New Jersey

## POST DOCTORAL TRAINING

1985 – 1986 Kennedy Memorial Hospital- University Medical Center, Cherry Hill, Stratford, Washington Township Divisions, New Jersey

1986 – 1987 Private practice Family Practitioner, Cherry Hill, New Jersey

1987 – 1991 Orthopedic Surgery Residency Kennedy Memorial Hospital – University Medical Center UMDNJ / SOM Director Carl Mogil, D.O., FACOS, FAOAO, Cherry Hill, Washington and Stratford Divisions, New Jersey

1990 – 1991 Chief Resident Kennedy Memorial Hospital – University Medical Center UMDNJ /SOM

2004-2014 Orthopedic Board Examination - Recertification

## SPECIAL RESIDENCY ROTATIONS

October – November 1989 Orthopedic Sports Medicine Graduate Hospital, Philadelphia, Pennsylvania Vincent DiStefano, MD

January – March 1990 Pediatric Orthopedics Alfred I. Dupont Institute, Wilmington, Delaware Richard Bowen, Jr. MD

April – June 1990 / November – December 1990 Trauma Orthopedics Cooper Trauma Center South New Jersey Regional One, Camden, New Jersey William DeLong, Jr., MD

October – November 1990 Foot and Ankle Orthopedics Thomas Jefferson Hospital, Philadelphia, Pennsylvania Keith Wapner, MD

## FELLOWSHIP TRAINING

July 1991 – June 1992 Graduate Hospital Sports Medicine Fellowship Program, Philadelphia, Pennsylvania, Chairman: Vincent DiStefano, MD

## HOSPITAL AND ANCILLARY AFFILIATIONS

2002 – Present     Shore Ambulatory Center, Somers Point, NJ

1992 – Present     Shore Memorial Hospital, Somers Point, NJ

1998 – Present     Burdette Tomlin Hospital, Cape May Court House , NJ

1997 – Present     Atlanticare Surgery Center, Egg Harbor Twp, NJ

## PROFESSIONAL MEMERSHIPS

American Osteopathic Association #44549

American Osteopathic Academy of Orthopedics Committee Member

American Osteopathic Academy of Orthopedics

New Jersey Association of Osteopathic Physicians and Surgeons

New Jersey Orthopedic Society

New Jersey Medical Society

Atlantic County Medical Society

## LICENSURE

New Jersey – 48472

DEA – 820634015

CDS – New Jersey – D44450

## ACADEMIC MEETINGS

September 1992 - Clinical Assembly and Exhibits/ACOS Chicago, IL.

November 1992 - Orthopedic Implant Techniques/Depuy Inc., Palm Springs, Ca.

May 1994 - 34th PostGraduate Seminar Course/ AOAO, Dearborn, Mi.

September 1995 - 68th Annual Clinical Assembly/ AOAOS, Chicago, IL.

December 1996 - Medical-Legal Update/ American Educational Institute, Vail, Co.

April 1996 – 1996 Annual Spring Meeting NJ Orthopedic Society, Nevis, West Indies

March 1997 - Shoulder and Knee Athletic Perspective/ AAOS, Steamboat Springs, Co.

May 1997 – AOAO 37th Annual Postgraduate Seminar, Baltimore, Md.

November 1997 - Worker's Compensation Update Seminar, Atlantic City, NJ

January 1998 - Genzyme Training Program/Genzyme Tissue Repair, Philadelphia, Pa.

March 1998 – Atlantic Regional Osteopathic Convention/NJOPS , Atlantic City, NJ

April 1998 – The 1998 Annual Spring Meeting/ NJ Orthopedic Society, Palm Spring, Ca.

October 1998 – Annual Clinical Assembly/ ACOS, Chicago, Il.

November 1998 – Current Techniques in Open and Arthroscopic Shoulder Surgery, Chicago, Il.

November 1998 – Autologous Chondrocyte Implantation in the Knee/ Genzyme Tissue Repair, Philadelphia, Pa.

February 1999 – Safety and Risk Association of New Jersey, Mays Landing, NJ

April 1999 -- Atlantic Regional Osteopathic Convention/ NJAOPS, Atlantic City, NJ

April 1999 -- The 1999 Annual Spring Meeting/ NJ Orthopedic Society, Nevis, West Indies

## CREATIVE PROJECTS /PUBLICATIONS

Mogil, C; Zuck, G.M.; et al
Management of the Unstable Inter-trochanteric Fracture
The Orthopod, P12, Vol. 24, No. 2
October 1987

Zuck, G.M.; Cole, Fred L:
The Management of the Unstable Distal Radius Fractures
The Jefferson Orthopedic Journal, P22-26, Vol. XVII

Zuck, G.M.
The Management of Humeral Shaft Fracture
Submitted for Publication

Zuck, G.M.; Freeman Miller
Supracondylar Fractures of the Humerus in Children
Submitted for Publication

Zuck, G.M.; DiStefano, Vincent;
Analysis of Synovial Fluid Cytokines following Allograft ACL Reconstruction
Submitted for Publication

Zuck, G.M.
The Elbow's Stabilizing Structures
Sports Medicine Update, P8-11, Vol. 12, No. 3
1997

Zuck, G.M.
Conquering Knee Injuries
Health Topics Supplement The Press of Atlantic City
July 1998

## PROFESSIONAL SPORTS MEDICINE TEAM AFFILIATIONS

Present:  Team Physician Atlantic City Boardwalk Bullies Hockey Team
          East Coast Hockey League 2001-2005

Former:  Assistant Team Physician
         Philadelphia Eagles 1991 - 1992

## PRESENTATIONS

April 1993 – Common Sports Related Injuries; Wellness Program, Shore Memorial Hospital, Somers Point, NJ

March 1995 – Evaluation and Treatment of  Work Related Injuries; Atlantic City Casino Risk Managers, Atlantic City, NJ

July 1995 – Evaluation and Treatment of Shoulder Injuries; American Academy of Disability Evaluating Physicians

April 1996 – Evaluation and Treatment of Knee Injuries; Linwood Convalescent Center, Linwood, NJ

July 1996 – Sports Medicine for Kids; Wellness Program, Shore Memorial Hospital, Somers Point, NJ

September 1996 – Arthroscopy and Sport Related Injuries; South Jersey Chapter of National Association of Orthopedic Nurses, Mays Landing, NJ