**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
--------------------------------------------------------------X
JOHAN DANIYAN,                                             :
                                                          :
                            Plaintiff,                    :
                                                          :
                    v.                                    :    No. 07 Civ. 02734 (JHR) (JS)
                                                          :
MARINA DISTRICT DEVELOPMENT                               :
COMPANY LLC, *d/b/a Borgata Hotel Casino &*               :
*Spa*,                                                    :
                                                          :
                            Defendant.                    :
                                                          :
--------------------------------------------------------------X


## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Plaintiff Johan Daniyan ("Mr. Daniyan") submits the following proposed jury

instructions pursuant to Fed. R. Civ. P. 51 and respectfully requests that he be permitted to

supplement or modify these proposed instructions as may be necessary or appropriate after

submission of all of the evidence at trial or during an appropriate conference with the Court.

### CAUSES OF ACTION

Mr. Daniyan alleges that Marina District Development Company LLC, d/b/a Borgata

Hotel Casino & Spa ("Defendant" or the "Borgata") subjected him to unlawful employment

discrimination and harassment based on his disability in violation of both federal law and New

Jersey state law.  Specifically, Mr. Daniyan brings federal claims under the Americans with

Disabilities Act (the "ADA") and state claims under the New Jersey Law Against Discrimination

(the "NJLAD") and the New Jersey Workers' Compensation Statute.

## THE LEGAL ELEMENTS OF THE CLAIMS

Mr. Daniyan makes several claims against the Defendant.  The parties' differing views of the facts raise issues under several different legal theories, each of which I will explain to you.  It is your responsibility to decide whether Mr. Daniyan has proven each of his claims against Defendant.

**First**, *__Discriminatory Treatment__* - Mr. Daniyan claims that he was subjected to adverse employment actions on the basis disability or perceived disability, in violation of the ADA and NJLAD.

**Second, *__Failure to Accommodate__*** – Mr. Daniyan claims that Defendant failed to provide him with a reasonable accommodation for his disability, and failed and refused to engage in discussion with Mr. Daniyan regarding his need for an accommodation, in violation of the ADA and NJLAD.

**Third, *__Retaliation__*** – Mr. Daniyan claims that he was subjected to unlawful retaliation for requesting an accommodation for his disability, in violation of  the ADA and NJLAD.

**Fourth, *__Retaliation__*** – Mr. Daniyan claims that he was subjected to unlawful retaliation for making a claim for workers' compensation benefits, in violation of New Jersey's Workers' Compensation Law.

Now that you have a basic understanding of the claims that have been asserted by Mr. Daniyan against Defendant, I will discuss the specific claims in detail.

**<u>Proposed Jury Instruction No. 1 – Basic Principle of Non-Discrimination</u>**

Members of the Jury, the law that governs this case is straight-forward.  We as a nation are committed to non-discrimination in employment.  Employers may not discriminate against any individual with regard to terms, conditions, or privileges of, or the compensation for, employment because of that individual's disability, race, gender, religion, ethnicity, or age, among other characteristics.  That means that a person's disability, for instance, may not lawfully motivate, even in part, any significant employment decision or practice.  Equally, employers may not retaliate against any individual who has complained about such discrimination going on in the work place or otherwise sought to protect his right to be free from discrimination.

Now let us turn to the specific claims on which Mr. Daniyan seeks relief in this case.

*California Federal Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 272 (1987). (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30 (1971)); *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation*, 463 U.S. 1073, 1091 (1983) (quoting *Paper Co. v. Moody*, 422 U.S. 405 (1975)); 42 U.S.C. § 1981 (reciting purpose of statute); 42 U.S.C. § 2000e *et seq.* ("Title VII"); 29 U.S.C. § 621 ("ADEA") (congressional statement of purpose); N.J. STAT. ANN. § 10:5-1 *et seq.* ("NJLAD") § 290(3) (2010).

**Proposed Jury Instruction No. 2 – Discrimination under the ADA and NJLAD**

Mr. Daniyan claims that the Borgata unlawfully discriminated against him by denying him equal terms and conditions of employment, including but not limited to, terminating his employment because of his disability, being regarded as disabled, and/or because of his record of disability.  The Borgata denies these allegations and instead maintains that it terminated Mr. Daniyan because of his alleged performance deficiencies.  If the Borgata did, in fact, terminate Mr. Daniyan because of his disability or perceived disability, that would be unlawful under the both the ADA and NJLAD.

Mr. Daniyan must prove, by a preponderance of the evidence, that (1) he has a "disability" within the meaning of the ADA or the NJLAD; (2) he is a "qualified individual" able to perform the essential functions of his position as a Heavy Porter; and (3) his disability was a determinative factor in the Borgata's decision to place him on written warning and terminate his employment.

It is Mr. Daniyan's burden to prove that it is more likely than not that the Borgata engaged in intentional discrimination because of this disability or perceived disability.  That is the ultimate issue you must decide: did the Borgata terminate Mr. Daniyan because of his disability.  Mr. Daniyan may do this directly, by proving that a discriminatory reason more likely than not motivated the Borgata's action, or indirectly, by proving that the Borgata's stated reason for its action is not the real reason for its action.

You may find that the Borgata had more than one reason or motivation for its actions.  For example, you may find that the Borgata was motivated both by Mr. Daniyan's disability or perceived disability and by other, nondiscriminatory factors, such as his job performance.  To prevail, Mr. Daniyan is not required to prove that his disability was the only reason or motivation

for the Borgata's actions. Rather, Mr. Daniyan need only prove that his disability or perceived disability played a role in the decision and that it made an actual difference in the Borgata's decision.  If you find that Mr. Daniyan's disability or perceived disability did make an actual difference in the Borgata's decision, then you must enter judgment for Mr. Daniyan.  If, however, you find that the Borgata would have made the same decision regardless of Mr. Daniyan's disability, then you must enter judgment for the Borgata.

Because direct proof of intentional discrimination is often not available, Mr. Daniyan is allowed to prove discrimination by circumstantial evidence.  In that regard you are to evaluate all of the indirect evidence of discrimination that you find was presented during the trial.

In particular, you should consider whether the explanation given by the Borgata for its actions was the real reason for its actions. If you don't believe the reason given by the Borgata is the real reason that it terminated Mr. Daniyan, you may find that Mr. Daniyan has proven his case of discrimination.  You are permitted to do so because, if you find the Borgata has not told the truth about why it acted, you may conclude that it is hiding the discrimination.  However, while you are permitted to find discrimination based upon your disbelief of the Borgata's stated reasons, you are not required to do so.  This is because you may conclude that the Borgata's stated reason is not the real reason, but that the real reason is something other than illegal discrimination.

I remind you that the ultimate issue you must decide is whether the Borgata engaged in illegal disability discrimination by terminating Mr. Daniyan, and that Mr. Daniyan has the burden to prove that discrimination occurred.

N.J. STAT. ANN. § 10:5-12 (2010); *Id.* at § 10:5-4.1; *Anderson v. Exxon*, 446 A.2d 486, 490-91 (N.J. 1982); *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 953-54 (N.J. 1999); *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1139 (N.J. 2005) (citing *Clowes v. Terminix Int'l, Inc.*, 538

A.2d 794, 805 (1988)) (laying out NJLAD prima facie case of discrimination); *Greenberg v. Camden County Vo-Tech Schools*, 708 A.2d 460, 465 (N.J. Super. Ct. App. Div. 1998); *Slohoda v. United Parcel Serv., Inc.*, 504 A.2d 53, 58-59 (N.J. Super. Ct. App. Div. 1986); *Viscik v. Fowler Equip. Co. Inc*., 800 A.2d 826, 833-35 (N.J. 2002); *Maiorino v. Schering Plough Corp*., 695 A.2d 353, 364 (N.J. Super. Ct. App. Div. 1997), *certif. denied*, 704 A.2d 19 (N.J. 1997); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

**Proposed Jury Instruction No. 3 – Reasonable Accommodation Under The ADA And NJLAD**

In this case Mr. Daniyan claims that the Borgata failed to provide a reasonable accommodation for him.  The ADA and NJLAD provide that an employer may not deny employment opportunities to a qualified individual with a disability if that denial is based on the need of the employer to make reasonable accommodations to that individual's disability.  To prevail on this claim, Mr. Daniyan must prove, by a preponderance of the evidence, that (1) he has a "disability" within the meaning of the ADA or the NJLAD; (2) he is a "qualified individual" able to perform the essential functions of his Heavy Porter position; (3) the Borgata was informed of Mr. Daniyan's basic need for an accommodation due to his disability; (4) providing accommodations would have been reasonable, in that the costs of that accommodation would not have clearly exceeded its benefits; (5) the Borgata failed to engage in an interactive process through which Mr. Daniyan could have remained employed by the Borgata despite his disability.  You should also keep in mind that if the Borgata regarded Mr. Daniyan as disabled, then Mr. Daniyan is entitled to the same accommodations that he would receive were he actually disabled.

The intent of the ADA and NJLAD is that there be an interactive process between the employer and the employee in order to determine whether there is a reasonable accommodation that would allow the employee to perform the essential functions of a job.  Both the employer and the employee must cooperate in this interactive process in good faith, once the employer has been informed of the employee's request for a reasonable accommodation.  Neither party can win this case simply because the other did not cooperate in an interactive process.  But you may consider whether a party cooperated in this process in good faith in evaluating the merit of that party's claim that a reasonable accommodation did or did not exist.

*Skerski v. Time Warner Cable Co.,* 257 F.3d 273 (3d Cir. 2001); *US Airways, Inc., v. Barnett,* 535 U.S. 391, 397 (2002); *Williams v. Philadelphia Housing Auth.*, 380 F.3d 751, 772 (3d Cir. 2004) ("regarded as" disabled); *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000) (interactive process); *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 312 (3d Cir. 1999) (employee can demonstrate that employer breached its duty to provide reasonable accommodations because it failed to engage in good faith interactive process); *Armstrong v. Burdette Tomlin Memorial Hosp.,* 438 F.3d 240, 248 (3d Cir. 2006) (error to instruct jury that plaintiff had burden of requesting specific reasonable accommodation "when, in fact, he only had to show he requested an accommodation").

**Proposed Jury Instruction No. 4 – Disability Definitions Under the ADA**

I will now define some of these terms in more detail.  Again, I remind you to consider the specific definitions I give you, and not to use your own opinions as to what these terms mean.

Under the ADA, the term "disability" includes a physical impairment that substantially limits a major life activity.  Major life activities are activities that are of central importance to everyday life and include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.  I instruct you that employment as a manual laborer, as Mr. Daniyan was for the Borgata, is a major life activity within the meaning of the ADA.

Under the ADA, the term "physical impairment" means any condition that prevents the body from functioning normally.

Under the ADA, an impairment "substantially limits" a person's ability to work if it prevents or restricts him from performing his job duties compared to the average person in the general population or is significantly restricted the condition, manner or duration under which he could perform a major life activity as compared to the condition, manner or duration that an average person in the general population can perform that same major life activity.  To decide if Mr. Daniyan's impairment substantially limited his ability to perform his duties as an employee for the Borgata, you should consider the nature of the impairment and how severe it is, how long it is expected to last, and its expected long-term impact.  Only impairments with a permanent or long-term impact are disabilities under the ADA.  Temporary injuries and short-term impairments are not disabilities.  If you find that Mr. Daniyan's impairment substantially limits one major life activity, you must find that it is a disability even if it does not limit any other

major life activity.  The name of the impairment or condition is not determinative.  What matters is the specific effect of an impairment or condition on the life of Mr. Daniyan.

The ADA's definition of "disability" includes not only those persons who are actually disabled, but also those who are "regarded as" having a disability by their employer.  The reason for this inclusion is to protect employees from being stereotyped by employers as unable to perform certain activities when in fact they are able to do so.  Mr. Daniyan is "regarded as" disabled within the meaning of the ADA if he proves any of the following by a preponderance of the evidence: (1) Mr. Daniyan had a physical or mental impairment that did not substantially limit his ability to perform his Heavy Porter duties, but was treated by the Borgata as having an impairment that did so limit his ability to perform the activity; or (2) Mr. Daniyan had an impairment that was substantially limiting his ability to perform his job duties only because of the attitudes of others toward the impairment; or (3) Mr. Daniyan did not have any impairment, but the Borgata treated him as having an impairment that substantially limited Mr. Daniyan's ability to perform his job duties.  Also, Mr. Daniyan can meet the requirement of being "regarded as" disabled if he was discriminated against because of an actual or perceived impairment, even if the impairment did not, or was not perceived to, limit a major life activity.

42 U.S.C. §§ 12102, 12201(a) (2010); 29 C.F.R. § 1630.2 (2010); *Bragdon v. Abbott*, 524 U.S. 624, 638 (1998) (stating that "ADA must be construed to be consistent with regulations issued to implement the Rehabilitation Act").

**Proposed Jury Instruction No. 5 – Disability Definitions Under the NJLAD**

I will now define some of these same terms as the pertain to the NJLAD as they are different than the ADA definitions that I just defined for you.  Again, I remind you to consider the specific definitions I give you, and not to use your own opinions as to what these terms mean.

Under the NJLAD, the term "disability" is defined as a physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness, any degree of paralysis, amputation, lack of physical coordination, or any mental, psychological or developmental disability, which prevents the normal exercise of any bodily or mental functions. The NJLAD provides the following illustrative, but not exhaustive, examples of conditions which will qualify as a disability: any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair or other remedial appliance or device.

To prevent any misunderstanding, the NJLAD's definition of disability is significantly broader than the analogous provisions of the ADA that I just described for you.  Unlike the ADA, the NJLAD does not require that an individual be substantially limited in a major life activity to qualify as disabled.

To decide if Mr. Daniyan's impairment constitutes a disability under the NJLAD, you must decide (1) whether he suffers from a physical disability, infirmity, malformation or disfigurement and (2) whether this was caused by bodily injury, birth defect or illness.  If you decided that Mr. Daniyan's injury meets both of these requirements, you must find that he is disabled within the meaning of the NJLAD.

N.J. STAT. ANN. § 10:5-5(q); *Visick v. Fowler Equip. Co., Inc.*, 800 A.2d 826, 835 (N.J. 2002) (emphais added); *Failla v. City of Passaic*, 146 F.3d 149, 154 (3d Cir. 1998).

11

**Proposed Jury Instruction No. 6 – Retaliation Under the ADA, NJLAD and New Jersey Workers' Compensation Law**

Mr. Daniyan claims that the Borgata retaliated against him because he requested an accommodation and sought Workers' Compensation benefits. The Borgata denies these allegations and instead maintains that it warned and ultimately terminated Mr. Daniyan because of legitimate, non-discriminatory reasons.

To prevail on his claim of retaliation for requesting reasonable accommodations, Mr. Daniyan must prove by a preponderance of the evidence that (1) he engaged in protected activity by requesting a reasonable accommodation; (2) that he was subjected to retaliation at the time, or after, the protected conduct took place; and (3) that there was a causal connection between the warning and termination of Mr. Daniyan and his request for a reasonable accommodation sufficient to show that Mr. Daniyan's requests played a role in the decision and made an actual difference in the Borgata's decision to warn and ultimately terminate Mr. Daniyan's employment.

Similarly, to prevail on his claim of retaliation for seeking workers' compensation benefits, Mr. Daniyan must establish that (1) he made a claim for workers' compensation benefits; (2) he suffered an adverse employment action; and (3) a casual connection existed between his pursuit or receipt of workers' compensation benefits and the Borgata's decision to warn and ultimately terminate his employment.

I will now discuss each of these three elements with you in more detail:

To establish this first element of his case, Mr. Daniyan need not prove the merits of his reasonable accommodation or workers' compensation requests, but only that, in doing so, Mr. Daniyan was acting under a good faith and reasonable belief that he was entitled to such reasonable accommodation and/or workers' compensation benefits. With respect to Mr.

Daniyan's ADA and NJLAD retaliation claim, Mr. Daniyan need not establish that he was disabled within the meaning of the ADA or NJLAD, but must instead only show that he had a reasonable, good faith belief that he was entitled to request the reasonable accommodation that he requested.

To establish the second element of a retaliation claim, Mr. Daniyan must show that he was subjected to retaliation by the Borgata. The term retaliation can include, but is not limited to, being discharged, demoted, not hired, not promoted, warned, or disciplined. In addition, many separate but relatively minor instances of behavior directed against the plaintiff may combine to make up a pattern of retaliatory behavior.

The third and final element is whether Mr. Daniyan can prove the existence of a causal connection between the protected activity and the alleged retaliation by the Borgata. Ultimately, in considering this third element of Mr. Daniyan's case, you must decide whether his requests for a reasonable accommodation or workers' compensation benefits played a role in the Borgata's decision to warn and ultimately terminate his employment. It is Mr. Daniyan's burden to prove that it is more likely than not that the Borgata retaliated against him because he requested a reasonable accommodation or made a claim for workers' compensation benefits. That is the ultimate issue you must decide: did the Borgata discipline and ultimately terminate Mr. Daniyan because he requested a reasonable accommodation or made a claim for workers' compensation benefits. Mr. Daniyan may prove this directly, by proving that a retaliatory reason more likely than not motivated the Borgata's action, or indirectly, by proving that the Borgata's stated reason for its action is not the real reason for its action.

You may find that the Borgata had more than one reason or motivation for its actions. For example, you may find that the Borgata was motivated both by Mr. Daniyan's requests for a

reasonable accommodation or workers' compensation benefits and by other, non-retaliatory factors, such as the Mr. Daniyan's job performance. To prevail, Mr. Daniyan is not required to prove that his requests for a reasonable accommodation or workers' compensation benefits was the only reason or motivation for the Borgata's actions. Rather, Mr. Daniyan must only prove that his requests for a reasonable accommodation or workers' compensation benefits played a role in the decision and that it made an actual difference in the Borgata's decision.  If you find that Mr. Daniyan's requests for a reasonable accommodation or workers' compensation benefits did make an actual difference in the Borgata's decision, then you must enter judgment for Mr. Daniyan. If, however, you find that the Borgata would have made the same decision regardless of Mr. Daniyan's requests for a reasonable accommodation or workers' compensation benefits, then you must enter judgment for the Borgata.

Because direct proof of intentional retaliation is often not available, Mr. Daniyan is allowed to prove retaliation by circumstantial evidence.  In that regard, you are to evaluate whatever indirect evidence of retaliation that you find was presented during the trial.  One kind of circumstantial evidence can involve the timing of events, *i.e.*, whether the Borgata's action followed shortly after it became aware of Mr. Daniyan's requests for a reasonable accommodation for his disability and/or Workers' Compensation benefits.  Another kind of circumstantial evidence might involve evidence that the Borgata became antagonistic or otherwise changed its demeanor toward Mr. Daniyan after it became aware of Mr. Daniyan's protected activity.

In addition, you should consider whether the explanation given by the Borgata for its warning and termination of Mr. Daniyan was the real reason for its actions. If you don't believe the reason given by the Borgata is the real reason that it warned and terminated Mr. Daniyan,

you may find that Mr. Daniyan has proven his case of retaliation.  You are permitted to do so because if you find the Borgata has not told the truth about why it acted, you may conclude that it is hiding the retaliation.  However, while you are permitted to find retaliation based upon your disbelief of the Borgata's stated reasons, you are not required to do so.  This is because you may conclude that the Borgata's stated reason is not the real reason, but that the real reason is something other than illegal retaliation.

I remind you that the ultimate issue you must decide is whether the Borgata engaged in illegal retaliation against Mr. Daniyan by warning and ultimately terminating his employment, and that Mr. Daniyan has the burden to prove that retaliation occurred.

N.J. STAT. ANN. § 10:5-12(d) (2010) (stating that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."); *See Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 584 (D.N.J. 2005) (citing *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 759 (3d Cir.2004) and *Buffa v. N.J. State Dep't of Judiciary,* 56 Fed.Appx. 571, 576 (3d Cir.2003); *Decree v. United Parcel Serv., Inc.*, Civ. No. 07-3674 (RBK)(AMD), 2009 U.S. Dist. LEXIS 86089, at *47 (D.N.J. Sept. 18, 2009) (citing *Krouse v. Am. Sterilizer, Co.*, 126 F.3d 494, 500 (3d Cir. 1997)) (explaining prima facie case for retaliation when plaintiff seeks workers' compensation benefits); *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 191 (3d Cir.2003); *Carmona v. Resorts Int'l Hotel, Inc.*, 915 A.2d 518, 530 (N.J. 2007); *Nardello v. Twp. of Voorhees*, 873 A.2d 577, 580-82 (N.J. Super. Ct. App. Div. 2005); *Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 891-92 (N.J. 2003); *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 272 (N.J. Super. Ct. App. Div. 2001); *Kolb v. Burns*, 727 A.2d 525, 531-32 (N.J. Super. Ct. App. Div. 1999).

**<u>Proposed Jury Instruction No. 7 – Credibility</u>**

In deciding the facts of this case, you will have to decide which witnesses to believe and which witnesses not to believe.  You may believe everything a witness says or only part of it or none of it.

In deciding what to believe here are some factors you may want to consider.

1.      Does the witness have an interest in the outcome of this case?

2.      How good and accurate is the witness' recollection?

3.      What was the witness' ability to know what he/she was talking about?

4.      Were there any contradictions or changes in the witness' testimony?  Did the witness say one thing at one time and something different at some other time?  If so, you may consider whether or not the discrepancy involves a matter of importance or whether it results from an innocent mistake or willful lie.  You may consider any explanation that the witness gave explaining the inconsistency.

5.      You may consider the demeanor of the witness.  By that I mean the way the witness acted, the way the witness talked, or the way the witness reacted to certain questions.

6.      Use your common sense when evaluating the testimony of a witness.  If a witness told you something that did not make sense, you have a right to reject that testimony.  On the other hand if what the witness said seemed reasonable and logical, you have a right to accept that testimony.

7.      Is the witness' testimony reasonable when considered in the light of other evidence that you believe?

**Proposed Jury Instruction No. 8 – Interested Witness – Employee of Party**

The fact that certain witnesses were and still are employed by the Borgata and the testimony you have heard of these witnesses' relationships with their employer may be considered by you in deciding whether the testimony of one or more of these witnesses is in any way influenced by the employment relationship with the Borgata.

*Lambert v. Beard*, No. 02-cv-9034, 2007 U.S. Dist. LEXIS 54047, at *52-53 (E.D. Pa. July 24, 2007); *Adams v. Supermarkets General Corp.*, 525 N.Y.S.2d 208 (It is error to refuse to give the suggested charge if the witness is an employee of a party at the time of trial); *Christensen v. Pittston Stevedoring Corp.*, 283 App. Div. 1088 (where the employer will benefit as a result of the verdict, the jury may find that the employee witness is in fact interested); *Majestic v Louisville & N. R. Co.*, 147 F2d 621 (6th Cir) (accord).

**<u>Proposed Jury Instruction No. 9 – Damages</u>**

Before I explain the damages questions on the verdict form, I want to give you some general instructions about damages.  It is your function to decide, on the evidence presented and the rules of law on which I have instructed you and by answering the questions I have put to you already, whether Mr. Daniyan is entitled to recover from the Borgata.  If you determine that Mr. Daniyan is entitled to recover from the Borgata, then you will consider damages.

Based on the various causes of action Mr. Daniyan has alleged, there are four potential types of damages you may award him.

(1) Economic Damages – These are the damages directly related to lost wages, bonuses, benefits and other compensation Mr. Daniyan may be entitled to recover that make take the form of back pay and/or front pay.

(2) Compensatory Damages – This type of damages provides an award to compensate Mr. Daniyan for pain and suffering, emotional distress, including feelings of depression, anxiety and/or humiliation, and/or harm to reputation that he may have suffered;

(3) Punitive Damages – These are damages that you may award to punish the Borgata for especially egregious conduct and to deter the Borgata and others from engaging in similar conduct in the future.

(4) Nominal Damages – This type of damages, appropriate only if Mr. Daniyan suffered no compensable injury, provides a small sum ($1.00) if Mr. Daniyan's federal rights were violated but where he suffered no actual injury.

**Proposed Jury Instruction No. 10 – Economic Damages – Back Pay**

  If you find that the Borgata has violated Mr. Daniyan's rights under the ADA, then you must determine the amount of damages that the Borgata's actions have caused Mr. Daniyan.  Mr. Daniyan has the burden of proving damages by a preponderance of the evidence.

  You may award as actual damages an amount that reasonably compensates Mr. Daniyan for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Mr. Daniyan would have received from the Borgata had he not been the subject of the Borgata's allegedly discriminatory warning and termination.

42 U.S.C. § 12117 (2010) (incorporating Title VII remedies into ADA); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 (3d Cir. 2006) (holding that court can award back pay as an equitable remedy in its discretion); *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 441-42 (3d Cir. 2009).

**Proposed Jury Instruction No. 11 – Economic Damages – Front Pay**

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Mr. Daniyan would reasonably have earned from the Borgata had Mr. Daniyan not been discriminatorily warned and terminated for the period from the date of your verdict through a reasonable period of time in the future.  From this figure you must subtract the amount of earnings and benefits Mr. Daniyan will receive from other employment during that time.  Mr. Daniyan has the burden of proving these damages by a preponderance of the evidence.

If you find that Mr. Daniyan is entitled to recovery of future earnings from the Borgata, then you must reduce any award by the amount of the expenses that Mr. Daniyan would have incurred in making those earnings.

42 U.S.C. § 12117 (2010) (incorporating Title VII remedies into ADA); *Marinelli v. City of Erie*, 25 F. Supp. 2d 674, 675 (W.D. Pa. 1998) (holding that ADA allows for back and front pay and that front pay relief is "within the sound discretion of the trial court"), *judgment vacated on other grounds*, 216 F.3d 354 (3d Cir. 2000); B*erndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789 F.2d 253, 260-61 (3d Cir. 1986) (awarding front pay as remedy where reinstatement not an option).

**<u>Proposed Jury Instruction No. 12 – Compensatory Damages</u>**

Mr. Daniyan is seeking compensatory damages because of the emotional pain and suffering, including feelings of depression, anxiety and/or humiliation, mental anguish he alleges he suffered as a result of the Borgata's conduct.  Compensatory damages are separate from back pay and front pay.  Accordingly, in order to receive compensatory damages, Mr. Daniyan must prove that he has suffered emotional distress as a result of being discriminated and/or retaliated against by the Borgata.  Mr. Daniyan can prove this through his own testimony without any requirement that he received professional counseling or therapy.

Additionally, you can distinguish the level of emotional distress Mr. Daniyan may be feeling today from the levels of emotional distress he alleges he suffered during and in the period immediately following being discriminated and/or retaliated against and otherwise mistreated by the Borgata.  In other words, you can award compensatory damages because of severe emotional anguish Mr. Daniyan may have suffered immediately after any of the Borgata's acts, even though he may not still be suffering at the same level today.

*Ridley v. Costco Wholesale Corp.*, 217 Fed. Appx. 130, 137 (3d Cir. 2007); *Borden v. Southeastern Pa. Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994); *Johnston v. School Dist.*, 2006 U.S. Dist. LEXIS 18791 (E.D. Pa. 2002); *Blakey v. Continental Airlines, Inc.*, 992 F. Supp. 731 (D.N.J. 1998); *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 573 (3d Cir. 2002) (emotional distress damages recoverable if plaintiff shows reasonable probability of harm caused by defendant's unlawful act).

**Proposed Jury Instruction No. 13 – Nominal Damages**

      If you return a verdict for Mr. Daniyan, but he has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.

      A person whose federal rights were violated is entitled to a recognition of that violation, even if he suffered no actual injury.  Nominal damages are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

      However, if you find actual injury, you must award compensatory damages, as I instructed you, rather than nominal damages.

42 U.S.C. § 12117 (2010) (incorporating Title VII remedies into ADA); *United States ex rel Tyrrell v. Speaker*, 535 F.2d 823, 830 (3d Cir. 1976).

**<u>Proposed Jury Instruction No. 14 – Punitive Damages</u>**

Mr. Daniyan is also seeking punitive damages.  Punitive damages are designed to punish especially egregious acts or violations of law and deter or discourage wrongdoers from engaging in similar conduct in the future.  You can determine that Mr. Daniyan is entitled to punitive damages if he demonstrates that the Borgata engaged in discriminatory practices and/or retaliation against him with malice or with a reckless indifference to his rights.

For example, you may award punitive damages if you determine that the Borgata knew it was violating antidiscrimination statutes and/or was recklessly indifferent to that fact. Accordingly, you may consider the fact that during the time period that Mr. Daniyan was employed with the Borgata, his supervisors were aware of discriminatory conduct and/or retaliation, and were intentionally allowing it to continue, or were recklessly indifferent to that fact.

*Kolstad v. American Dental Ass'n*, 527 U.S. 526, 539-46 (1999); *Ridley v. Costco Wholesale Corp.*, 217 Fed. Appx. 130, 137 (3d Cir. 2007); *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 124 (3d Cir. 1999); *Mogull v. CB Commercial Real Estate Group, Inc.*, 162 N.J. 449, 473, 744 A.2d 1186 (N.J. 2000).

Dated: January 3, 2011
      New York, New York             Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP


By:_____/s/ Gregory N. Filosa_____
                Gregory N. Filosa

85 Fifth Avenue
New York, NY  10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
gfilosa@twglaw.com

LAW OFFICE OF MARY L. BEJARANO, PC

Mary L. Bejarano (admitted *pro hac vice*)
118-21 Queens Boulevard, Suite 606
Forest Hills, NY  11363
Telephone:  (718) 408-1620
Facsimile:   (718) 261-9302
mary@bejaranolaw.com

*Counsel for Plaintiff*