UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------X
JOHAN DANIYAN,

                         Plaintiff,

                 v.                                 No. 07 Civ. 02734 (JHR) (JS)

MARINA DISTRICT DEVELOPMENT
COMPANY LLC, *d/b/a Borgata Hotel Casino &
Spa*,

                        Defendant.
-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS UNDER THE ADA AND THE NJLAD

THOMPSON WIGDOR & GILLY LLP

Gregory N. Filosa
85 Fifth Avenue
New York, NY  10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
gfilosa@twglaw.com

LAW OFFICE OF MARY L. BEJARANO, PC

Mary L. Bejarano (admitted *pro hac vice*)
118-21 Queens Boulevard, Suite 606
Forest Hills, NY  11363
Telephone:  (718) 408-1620
Facsimile:   (718) 261-9302
mary@bejaranolaw.com

*Counsel for Plaintiff*

**PRELIMINARY STATEMENT**

Plaintiff Johan Daniyan ("Plaintiff" or "Mr. Daniyan") respectfully submits this memorandum of law in opposition to Defendant Marina District Development Company LLC, d/b/a Borgata Hotel Casino & Spa's ("Defendant" or the "Borgata") Motion To Dismiss Plaintiff's Claims Under The ADA And The NJLAD.  While Defendant improperly characterizes its motion as a "motion to dismiss," given that Defendant's motion was made at the conclusion of Plaintiff's case in chief, the standard for a directed verdict pursuant to Fed. R. Civ. P. 50 applies to the instant motion.

At the outset, it bears noting that Defendant's memorandum of law in support of its motion only seeks dismissal of Plaintiff's claims under the ADA and NJLAD and raises the singular argument that Defendant believes that Plaintiff has failed to present evidence which would permit the jury to reasonably determine that Plaintiff was disabled within the meaning of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101, *et seq.*, or the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq*. Thus, Defendant does not appear to dispute that Plaintiff has presented sufficient evidence to support the remaining elements of his claims under the ADA and NJLAD.  Similarly, Defendant does not seek dismissal of Plaintiff's claim of unlawful retaliation against Plaintiff in violation of the New Jersey Worker's Compensation Law, N.J.S.A. 34:15-1, *et seq.* and this claim should proceed to the jury as well, notwithstanding Defendant's motion.  For the reasons outlined more fully below, Plaintiff respectfully requests that the Court deny Defendant's motion.

**ARGUMENT**

I. **DIRECTED VERDICT STANDARD**

Defendant carries a high burden in establishing grounds for its motion for a directed verdict.[1] A trial judge should grant a party's motion for a directed verdict when, "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing FED. R. CIV. P. 50(a)); *see also Laskaris v. Thornburg*, 733 F.2d 260, 264 (3d Cir. 1984) ("[a] verdict may be directed for a defendant only where there is insufficient evidence from which a jury could reasonably find for the opponent"). Conversely, "if reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51 (citing *Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949)). Similarly, "[i]f there is conflicting evidence that could reasonably lead to inconsistent inferences, a verdict may not be directed." *Laskaris*, 733 F.3d at 264. As outlined below, Plaintiff has presented more than sufficient evidence from which a jury could find that Defendant violated the ADA and the NJLAD when it terminated Plaintiff's employment with the Borgata.

II. **PRIMA FACIE CASE OF DISABILITY DISCRIMINATION UNDER THE ADA AND NJLAD**

To establish a *prima facie* case of discrimination under both the ADA and NJLAD, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA or NJLAD; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable

---

[1] While Defendant improperly characterizes its motion as a motion to dismiss, Defendant's motion appears to be made pursuant to Fed. R. Civ. P. 50, which permits a party to make a motion for judgment as a matter of law at any time before the case submitted to the jury. Fed. R. Civ. P. 50(a)(2). Thus, the appropriate standard is that applied to a judgment as a matter of law (or a directed verdict) and not the standard applied to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Compare Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (stating that motion to dismiss standard is based on pretrial pleadings, including plaintiff's complaint, and must contain "sufficient factual matter, [which] 'state[s] a claim to relief that is plausible on its face'"), *with Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) ("directed verdict motions are made at trial and decided on the evidence that has been admitted").

2

accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *See Gaul v. Lucent Technologies,* 134 F.3d 576, 580 (3d Cir. 1998) (citations omitted); *Williams v. Philadelphia Housing Auth. Police Dept.,* 380 F.3d 751, 761 (3d Cir. 2004); *Victor v. State*, 952 A.2d 493, 504 (N.J. Super. Ct. App. Div. 2008). In its motion, Defendant claims that Plaintiff has failed to prove the first prong of this test, i.e. that Plaintiff is disabled within the meaning of the ADA or NJLAD. As set forth below, Defendants claims are unsupported by the applicable case law as well as the facts as presented thus far at trial. Indeed, Plaintiff has put forth sufficient evidence that the jury could reasonably conclude that he was disabled within the meaning of the ADA and NJLAD.

**III.    PLAINTIFF IS DISABLED UNDER THE ADA**

Based on the evidence presented at trial, there is more than enough evidence upon which a jury could find that Plaintiff is disabled under the ADA. The ADA defines "disability"' as either "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). As outlined below, Plaintiff has presented evidence which establishes that (i) he suffers from a physical impairment that substantially limits one or more of his major life activities and (ii) the Borgata regarded him as having such impairment following his June 11, 2005 debilitating back injury.

   **A.    <u>Plaintiff Is Substantially Limited In One Or More Major Life Activities</u>**

The testimony presented by Plaintiff thus far at the trial of this matter is more than sufficient for a jury to conclude that he is substantially limited in one or more major life activities. The ADA specifically defines major life activities to include the following: "caring for oneself, performing manual tasks, . . . sleeping, walking, standing lifting, bending, . . . and

3

working." 42 U.S.C. § 12102.  Further, courts have interpreted the definition of "major life activities" to include those activities that "the average person in the general population can perform with little or no difficulty."  *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999). The evidence presented at trial has established that Mr. Daniyan is significantly and permanently limited by his disabling back injury in performing a plethora of major life activities and, therefore, is disabled under the ADA.

The evidence presented at trial has shown that, as a result of Mr. Daniyan's back injury, he is disabled within the meaning of the ADA.  Specifically, Plaintiff has presented the following evidence which is more than sufficient for the jury to reasonably determine that he was substantially limited in more than one life activity at the time that he was terminated from the Borgata:

- Joanne Daniyan, Plaintiff's mother, testified that during the days following his injury, "my mother and myself, we monitored him.  We helped him to get up, to walk from one room to another.  He needed to get dressed.  We helped him put on the shirt, put on his shoes, socks.  Assisted him to get to the car if he needed to get out to get his medical supplies.  And just made sure that he took his medication on time, ate properly . . . propped him up."  (Jan. 11, 2011 Tr. Tsp. at 11:14-18);

- Ms. Daniyan also testified that since the injury, Mr. Daniyan "can't do any heavy lifting, walking becomes difficult for periods of time.  Trouble sitting for periods of time.  Can't stand for periods of time." (Jan. 11, 2011 Tr. Tsp. at 31:18-20);

- Ms. Daniyan further testified that since her son's injury, he does not play sports the way he used to and he is not able to help out around the house the way he used to. (Jan 11, 2011 Tr. Tsp. at 32:11-16);

- Plaintiff testified that he has been in pain since he injured his back on June 11, 2005 and he described this pain as "a burning sensation, throbbing, and it is hard for me to rest and sleep at night;" (Jan. 13, 2011 Tr. Tsp. at 75:3-6, 14-18);

- Plaintiff also testified that since his injury, he has been unable to do all the things that he was able to do before the accident; (Jan. 13, 2011 Tr. Tsp. at 75:19-21);

4

- Dr. Arthur Tiger, Plaintiff's medical expert,[2] testified that while Mr. Daniyan did not break any bones, "[h]e had obviously a significant bruise to [his lower back]" and that Mr. Daniyan "had injuries to the muscles that supported the area;" (Jan. 11, 2011 Tr. Tsp. at 114:6-7);

- Dr. Tiger also testified that, in his expert opinion, the records that he reviewed following Plaintiff's treatment by the Defendant's own doctors (which included Dr. Glenn Zuck), showed that Mr. Daniyan "was having significant back pain at the time Dr. Zuck saw him." (Jan. 11, 2011 Tr. Tsp. at 115:16-18);

- Dr. Tiger also testified that, given the nature of the injury, he was not surprised that Mr. Daniyan was still experiencing pain two and one-half years after the injury; as Dr. Tiger explained, he was taken to the hospital by ambulance; he had significant investigative tests at the hospital; he saw a doctor that was concerned enough to put him on a lot of medication; (Jan. 11, 2011 Tr. Tsp. at 116:11-23);

- Dr. Tiger also testified that, based on his examination of Mr. Daniyan, as a result of his injury at the Borgata, Mr. Daniyan had "a constant pain in his back that would limit his daily activity" and that "he wouldn't be able to participate in recreational activities" and "he would have difficultly if he was asked to do any heavy duty activities;" (Jan. 11, 2011 Tr. Tsp. at 120:2-9).

- Dr. Tiger also testified that, based on his examination of Mr. Daniyan, he concluded that (i) Mr. Daniyan had a chronic sprain of the muscles in his lower back (see Jan. 11, 2011 Tr. Tsp. at 121:23-25) and (ii) Mr. Daniyan's injuries were permanent (see Jan. 11, 2011 Tr. Tsp. at 121:10-11).

In addition to the above testimony, there can be no dispute that the emergency room physicians that treated Mr. Daniyan determined that he was unable to work for the two days following his injury and that Dr. Glenn Zuck, the Borgata's own doctor, determined that Mr. Daniyan was unable to work for an additional three days following his injury. (*See* PX_16; D-50). Dr. Zuck also prescribed Plaintiff five different medications as a result of his injury, including Motrin (pain medication and anti-inflammatory), Darvocet (pain medication), Flexural (muscle relaxant), Medrol (steroids), and a donut for the contusion to Mr. Daniyan's coccyx.

---

[2] In their motion, Defendant continues to argue that Dr. Tiger's testimony should be disregarded because he did not examine Mr. Daniyan until two and half years after his termination from the Borgata, but as the Court noted at the outset of this trial, most experts are retained much after the injury has been inflicted and they are permitted to testify as to their beliefs as to the permanency of the injury and the jury can then determine whether they choose to accept or reject his testimony.

(Jan. 11, 2011 Tr. Tsp. at 114:18-115:9).  The jury can also infer from these prescriptions by Dr. Zuck, the Borgata's medical doctor, that Plaintiff was disabled shortly after he injured his back.

Based on the foregoing, there is sufficient evidence for the jury to determine that, both at the time of his termination from the Borgata and at present, Mr. Daniyan was substantially limited in the major life activities of performing manual tasks, sleeping, walking, lifting, bending and working.  Further, Dr. Tiger testified that as a result of his injury, Mr. Daniyan "would have constant pain in his back that would limit his activities of daily living."  (Jan. 11, 2011 Tr. Tsp. at 120:4-5).  Thus, it is clear that Mr. Daniyan cannot perform those activities "that the average person in the general population can perform with little or no difficulty," and Defendant is not entitled to a directed verdict on this issue.

### B. Defendant Perceived Plaintiff As Being Substantially Limited In One Or More Major Life Activities

In addition to the evidence that Mr. Daniyan has presented upon which the jury could reasonably determine that he is (and was at the time of his termination from the Borgata) substantially limited in more than one major life activity, he has also presented sufficient evidence upon which a jury could reasonably determine that he was regarded as having such impairment by Defendant.  Under the ADA, an employee is "regarded as" disabled if he:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Eshelman v. Agere Sys.*, 554 F.3d 426, 434 (3d Cir. 2009) (citing 29 C.F.R. § 1630.2(l)).

In the present case, it is undeniable based on the evidence adduced at trial that the Borgata regarded Mr. Daniyan as disabled. Specifically, the emergency room physicians that treated Mr. Daniyan determined that, as a result of his injury, he was unable to work for the two days following his injury. (*See* PX _16). Similarly, Dr. Zuck, the Borgata's own doctor, determined that, because of his injury, Plaintiff was unable to work for the next three days. (*See* D-50). In addition, the Borgata was also aware of the severity of Mr. Daniyan's injury because his supervisor Alex Macchione went to the loading dock minutes after Mr. Daniyan injured his back and saw that he was in enormous pain and could not get up off of the ground. Mr. Macchione also saw how Mr. Daniyan had to be treated by emergency medical personnel, strapped to a gurney and rushed to the hospital in an ambulance. There is also sufficient evidence for the jury to reasonably conclude that other executives at the Borgata perceived Mr. Daniyan as being disabled because of the surveillance video that recorded his injury and the emergency medical treatment he received. Thus, there can be no dispute that Defendant regarded Mr. Daniyan as substantially limited in the major life activity of working during this time period and this is sufficient evidence for this jury to determine that Plaintiff was regarded as having been disabled within the meaning of the ADA.

### IV.   PLAINTIFF IS DISABLED UNDER THE NJLAD

The evidence presented by Plaintiff at trial is also sufficient for the jury to reasonably conclude that Plaintiff is disabled within the meaning of the NJLAD. The NJLAD defines a "disability" as any "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness, . . . any degree of paralysis, amputation, lack of physical coordination, . . . or any mental, psychological or developmental disability, . . . which prevents the normal exercise of any bodily or mental functions." N.J. STAT. ANN. § 10:5-5(q).

Accordingly, the NJLAD's definition of disability "has been interpreted as significantly broader than the analogous provisions of the [ADA]." *Visick v. Fowler Equip. Co., Inc.*, 800 A.2d 826, 835 (2002) (emphasis added); *see also Fasano v. Fed. Res. Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 1998). Indeed, unlike the ADA, the NJLAD's definition of disability "does not incorporate the requirement that the condition result in a substantial limitation on a major life activity." *Failla v. City of Passaic*, 146 F.3d 149, 154 (3d Cir. 1998).

Pursuant to the NJLAD, there are two categories of disability: physical and non-physical. *See* N.J. STAT. ANN. § 10:5-5(q); *Visick*, 800 A.2d at 834. To meet the physical standard, a plaintiff must prove that he is (i) suffering from "physical disability, infirmity, malformation or disfigurement" (ii) "which is caused by bodily injury, birth defect or illness." N.J. STAT. ANN. § 10:5-5(q). Further, the NJLAD provides the following illustrative (but not exhaustive) examples of conditions which will qualify as a disability: "any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment, deafness or hearing impediment, muteness or speech impediment or physical reliance on a service or guide dog, wheelchair or other remedial appliance or device." *Id.*

As outlined more fully above, Mr. Daniyan has presented sufficient evidence for the jury to reasonably determine that he suffered from a physical disability, infirmity, malformation or disfigurement which was cause by bodily injury. This evidence establishes that Mr. Daniyan is disabled within the meaning of the NJLAD.[3] *See Failla*, 146 F.3d at 154-55 (finding that "the

---

3   In recognition of the weakness of Defendant's argument and as evidence of the lengths to which it will go to manufacture legal support for their position where none exists, Defendant cites to a New Jersey Attorney General Formal Opinion for the proposition that "[i]t has been held that a back sprain does not constitute a physical handicap which requires accommodation." (*See* Def. Memo at 5). Yet the cited authority does not state this. Instead, the Attorney General Opinion cited by Defendant deals with the issue of whether addiction or dependence to legal or illegal drugs is a disability that is protected by the NJLAD. Indeed, nowhere in the 12 page opinion is there any reference to a back injury let alone any support for Defendant's contention that "it has been held that a back sprain does not constitute a physical injury which requires accommodation. A copy of New Jersey Attorney General Formal Opinion No. 1-1989 is attached hereto as Exhibit A.

8

evidence demonstrated that [the plaintiff] suffered from a painful back condition that was aggravated by night shift work" sufficiently established a *prima facie* NJLAD discrimination case); *Dicino v. Aetna U.S. Healthcare*, No. 01 Civ. 3206 (JBS), 2003 WL 21501818, at *14 (D.N.J. June 23, 2006) (holding that reasonable juror could find that plaintiff suffered from a physical disability in the form of pancreatitis and accompanying back and abdominal pains where plaintiff was unable to drive for longer than 30 minute intervals and only able to jog and walk on a treadmill for ten minutes at a time). Thus, Mr. Daniyan is a disabled person within the meaning of the NJLAD and Defendant is not entitled to a directed verdict on Plaintiff's NJLAD claim.

### V. PLAINTIFF DOES NOT HAVE TO ESTABLISH THAT HE IS DISABLED TO STATE A CLAIM FOR RETALIATION UNDER THE ADA

Unlike a claim for discrimination under the ADA and/or NJLAD, a retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is "disabled" within the meaning of the ADA or NJLAD. The Third Circuit has held that "[t]he right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.'" *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 191 (3d Cir. 2003). Thus, as opposed to showing disability, a plaintiff need only show that he had a reasonable, good faith belief that he was entitled to request the reasonable accommodation he requested. *Id.*

Based on the evidence presented at trial, there can be no dispute that Plaintiff engaged in protected activity when he requested, but was summarily denied, a reasonable accommodation following his June 11, 2005 injury. Specifically, (i) Ms. Daniyan testified that she made

9

repeated requests for her son to be given a light duty assignment to accommodate his back injury (*see* Jan. 11, 2011 Tr. Tsp. at 18:18-21; 19:1-7; 37:19-38:2; 39:3-12); (ii) Mr. Daniyan testified that he requested light duty from Santosh Kuruvilla (*see* Jan. 13, 2011 Tr. Tsp. at 50:4-12); and (iii) Defendant admits that Ms. Daniyan requested light duty for her son from the Borgata's medical unit following Mr. Daniyan's June 11, 2005 back injury. (*See* Jan. 18, 2011 Tr. Tsp. at 80:3-15). Accordingly, independent of the evidence which establishes that Mr. Daniyan is (and was at the time of his termination) disabled within the meaning of the ADA and NJLAD, there is sufficient evidence that Mr. Daniyan requested an accommodation and it is undisputed that he was suspended and terminated days later. Thus, Defendant is not entitled to dismissal of Plaintiff's ADA retaliation claim.

## **CONCLUSION**

For the reasons outlined more fully above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Claims Under the ADA and the NJLAD and allow these claims to be decided by the jury.

Dated: January 19, 2011
       New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: /s/ Gregory N. Filosa
     Gregory N. Filosa

85 Fifth Avenue
New York, NY  10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
gfilosa@twglaw.com

LAW OFFICE OF MARY L. BEJARANO, PC

Mary L. Bejarano (admitted *pro hac vice*)
118-21 Queens Boulevard, Suite 606
Forest Hills, NY  11363
Telephone:  (718) 408-1620
Facsimile:   (718) 261-9302
mary@bejaranolaw.com

*Counsel for Plaintiff*